**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EAST TENNESSEE NATURAL GAS
COMPANY,
> *Plaintiff-Appellee,*

v.

JOHN F. SAGE; LINDA K. SAGE,
> *Defendants-Appellants,*

and

1.20 ACRES IN WYTHE COUNTY,
VIRGINIA; MARY CASEL,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
> *Defendants.*

No. 03-1708

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-107-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

MARGARET CLANTON,
                    *Defendant-Appellant,*

                    and

.28 ACRES IN HENRY COUNTY,
VIRGINIA; LUCY CLARK,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1709

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-114-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

SCOTT A. FONTAINE; LILLIE M.
FONTAINE,
                    *Defendants-Appellants,*

                    and

2.09 ACRES IN HENRY COUNTY,
VIRGINIA; LUCY CLARK,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1710

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-120-4)

EAST TENNESSEE NATURAL GAS
COMPANY,

*Plaintiff-Appellee,*

v.

ALVA HOLLAND,

*Defendant-Appellant,*

and

.54 ACRES IN HENRY COUNTY,
VIRGINIA; JANET M. HOLLAND; LUCY
CLARK, Commissioner of Revenue;
JOHN DOE, et al.; UNKNOWN OWNERS,
*Defendants.*

No. 03-1711

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-123-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

MAYNARD R. JOYCE,
                    *Defendant-Appellant,*

                    and

2.26 ACRES IN CARROLL COUNTY,
VIRGINIA; JANE A. HARRISON, County
Assessor; JOHN DOE, et al.;
UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1712

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-125-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

ERVIN L. FRAZIER, JR.,
                    *Defendant-Appellant,*

                    and

1.02 ACRES IN CARROLL COUNTY,
VIRGINIA; JANE A. HARRISON, County
Assessor; JOHN DOE, et al.;
UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1713

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-126-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

            v.

BARBARA G. VASS; DOSSIE G.V.
HALL, a/k/a Dossie Shockley Vass,
                    *Defendants-Appellants,*        No. 03-1714

            and

1.59 ACRES IN CARROLL COUNTY,
VIRGINIA; JANE A. HARRISON, County
Assessor; JOHN DOE; UNKNOWN
OWNERS,
                    *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-128-4)

EAST TENNESSEE NATURAL GAS
COMPANY,

*Plaintiff-Appellee,*

v.

LAYTON RUSSELL HANCOCK; JOHN
WENDELL HANCOCK; SONIA LUCILLE
EASTER; UNA FAYE SAUNDERS;
WAYNE DWIGHT HANCOCK; HEIRS OF
ROYAL EARLY HANCOCK,

*Defendants-Appellants,*

and

2.57 ACRES IN CARROLL COUNTY,
VIRGINIA; JOHN DOE, et al.;
UNKNOWN OWNERS; JOSEPHINE H.
POWERS; RUDOLPH HANCOCK; ALENE
SUMNER; JAMES F. HANCOCK;
TALFORD CLAY HANCOCK; THOMAS
KENNETH HANCOCK; AVERETTE EARLY
HANCOCK; JANE A. HARRISON,
County Assessor,

*Defendants.*

No. 03-1715

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-129-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

H. WADE BAKER; LOLA W. BAKER,
                    *Defendants-Appellants,*

                    and

1.91 ACRES IN CARROLL COUNTY,
VIRGINIA; JOHN DOE, et al.;
UNKNOWN OWNERS; JANE A.
HARRISON, County Assessor,
                    *Defendants.*

No. 03-1716

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-132-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

GREGORY L. SEIBERT,
                    *Defendant-Appellant,*

                    and

.45 ACRES IN CARROLL COUNTY,
VIRGINIA; JANE A. HARRISON; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1717

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-133-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

            v.

ROBIN MARIE SEIBERT; GREGORY L.
SEIBERT,
                    *Defendants-Appellants,*          No. 03-1718

            and

.61 ACRES IN CARROLL COUNTY,
VIRGINIA; JANE A. HARRISON, County
Assessor; JOHN DOE, et al.;
UNKNOWN OWNERS,
                    *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-134-4)

EAST TENNESSEE NATURAL GAS
COMPANY,

*Plaintiff-Appellee,*

v.

HELEN E. MELTON; CHARLOTTE A.
EDWARDS,

*Defendants-Appellants,*

and

JANE A. HARRISON, County Assessor;
JOHN DOE, et al.; UNKNOWN OWNERS;
4.76 ACRES IN CARROLL COUNTY,
VIRGINIA,

*Defendants.*

No. 03-1719

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-135-4)

EAST TENNESSEE NATURAL GAS
COMPANY,

*Plaintiff-Appellee,*

v.

RALPH D. HOWELL; MABEL FULCHER,

*Defendants-Appellants,*

and

ROSE C. HOWELL; JOHN DOE, et al.;
C. JERRY LOVE, Commissioner of
Revenue; UNKNOWN OWNERS; 3.18
ACRES IN PATRICK COUNTY, VIRGINIA,

*Defendants.*

No. 03-1720

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-138-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

           v.

MELVIN A. THOMAS,
                    *Defendant-Appellant,*            No. 03-1721

           and

1.40 ACRES IN PATRICK COUNTY,
VIRGINIA; JOHN DOE, et al.; C. JERRY
LOVE, Commissioner of Revenue;
UNKNOWN OWNERS,
                    *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-140-4)

EAST TENNESSEE NATURAL GAS
COMPANY,

*Plaintiff-Appellee,*

v.

JOHN M. LEWIS; CORNELIA A. LEWIS,
*Defendants-Appellants,*

and

C. JERRY LOVE, Commissioner of
Revenue; JOHN DOE, et al.;
UNKNOWN OWNERS; .37 ACRES IN
PATRICK COUNTY, VIRGINIA,

*Defendants.*

No. 03-1722

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-142-4)

EAST TENNESSEE NATURAL GAS
COMPANY,

*Plaintiff-Appellee,*

v.

EARL R. POTTER; JOAN A. POTTER,
*Defendants-Appellants,*

and

C. JERRY LOVE, Commissioner of
Revenue; JOHN DOE, et al.;
UNKNOWN OWNERS; .60 ACRES IN
PATRICK COUNTY, VIRGINIA,

*Defendants.*

No. 03-1723

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-145-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                              *Plaintiff-Appellee,*

          v.

JERRY S. THOMAS; BETTY B. THOMAS,
               *Defendants-Appellants,*                     No. 03-1724

          and

3.04 ACRES IN PATRICK COUNTY,
VIRGINIA; JOHN DOE, et al.;
UNKNOWN OWNERS; C. JERRY LOVE,
Commissioner of Revenue,
                              *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-146-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

              v.

NANCY U. STANLEY,
                    *Defendant-Appellant,*

              and

3.62 ACRES IN PATRICK COUNTY,
VIRGINIA; C. JERRY LOVE,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1725

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-150-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

v.

OTRA MARTIN; EDNA LOU MARTIN
SMART; ELLEN M. FULCHER; HARVEY
GLENN FULCHER,
                    *Defendants-Appellants,*

and

3.81 ACRES IN PATRICK COUNTY,
VIRGINIA; C. JERRY LOVE,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1726

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-153-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

ROBERT E. MEADOWS; MARION C.
MEADOWS,
                    *Defendants-Appellants,*          No. 03-1727

                    and

.94 ACRES IN PATRICK COUNTY,
VIRGINIA; C. JERRY LOVE,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-155-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

              v.

WILLIAM TROY STRICKLAND; SUSAN
M. STRICKLAND,
                    *Defendants-Appellants,*              No. 03-1728

              and

1.13 ACRES IN PATRICK COUNTY,
VIRGINIA; C. JERRY LOVE,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-160-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
Plaintiff-Appellee,

v.

JAMES A. KEESEE; JOANNE RICHMOND
KEESEE,
Defendants-Appellants,

and

1.58 ACRES IN PATRICK COUNTY,
VIRGINIA; C. JERRY LOVE,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
Defendants.

No. 03-1729

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-168-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

              v.

THOMAS C. WILLIAMS, JR.; JEANNIE
B. WILLIAMS,
                    *Defendants-Appellants,*          No. 03-1730

              and

3.27 ACRES IN WYTHE COUNTY,
VIRGINIA; MARY CASEL,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                            *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-185-4)

EAST TENNESSEE NATURAL GAS
COMPANY,

                *Plaintiff-Appellee,*

      v.

ANISSA J. BRADY, a/k/a Anissa
Holland,

                *Defendant-Appellant,*      No. 03-1731

      and

.65 ACRES IN CARROLL COUNTY,
VIRGINIA; JANE A. HARRISON, County
Assessor; JOHN DOE, et al.;
UNKNOWN OWNERS,

                *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-197-4)

EAST TENNESSEE NATURAL GAS
COMPANY,

                *Plaintiff-Appellee,*

      v.

CHARLES K. WEBB; LENA WEBB,

                *Defendants-Appellants,*     No. 03-1732

      and

.64 ACRES IN CARROLL COUNTY,
VIRGINIA; JANE A. HARRISON, County
Assessor; JOHN DOE, et al.;
UNKNOWN OWNERS,

                *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-198-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

            v.

CALVIN HUGH WEBB; LINVOL OSCAR
WEBB; WENDELL WAYNE WEBB,
                    *Defendants-Appellants,*                No. 03-1733

            and

3.38 ACRES IN CARROLL COUNTY,
VIRGINIA; JOHN DOE, et al.; JANE A.
HARRISON, County Assessor;
UNKNOWN OWNERS,
                    *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-202-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

ALVA JACKSON HORTON; HEATH
WEBB,
                    *Defendants-Appellants,*         No. 03-1734

                    and

1.60 ACRES IN CARROLL COUNTY,
VIRGINIA; JANE A. HARRISON, County
Assessor; JOHN DOE, et al.;
UNKNOWN OWNERS,
                    *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-203-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

GEORGE LEWIS WEBB; EDWARD PAUL
WEBB; ROGER LEE WEBB; JOEL RAY
WEBB,
                    *Defendants-Appellants,*                    No. 03-1735

                    and

.30 ACRES IN CARROLL COUNTY,
VIRGINIA; JANE A. HARRISON, County
Assessor; JOHN DOE, et al.;
UNKNOWN OWNERS,
                    *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-208-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

DOROTHEA W. BRYANT,
                    *Defendant-Appellant,*

                    and

1.23 ACRES IN CARROLL COUNTY,
VIRGINIA; JANE A. HARRISON, County
Assessor; JOHN DOE, et al.;
UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1736

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-211-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                    v.

CLYDE HOLLAND; SHIRLEY HOLLAND,
                    *Defendants-Appellants,*

                    and

5.2 ACRES IN HENRY COUNTY,
VIRGINIA; LUCY CLARK,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1737

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-212-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

              v.

L. J. RECTOR; CHARIS JEAN RECTOR;
JOHNNY J. RECTOR; JOE RECTOR,
                    *Defendants-Appellants,*          No. 03-1738

              and

3.98 ACRES IN SMYTH COUNTY,
VIRGINIA; RICHARD WALKER,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-216-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                v.

FRED TOLLEY; GUIDA TOLLEY,
                    *Defendants-Appellants,*

                and

4.0 ACRES IN WYTHE COUNTY,
VIRGINIA; MARY CASEL,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1739

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-218-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

                v.

JAMES FOGELSONG; GLEN STUART
FOGELSONG,
                    *Defendants-Appellants,*

                and

2.64 ACRES IN WYTHE COUNTY,
VIRGINIA; MARY CASEL,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1740

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-221-4)

EAST TENNESSEE NATURAL GAS
COMPANY,
                    *Plaintiff-Appellee,*

             v.

WEAVER ENTERPRISES, INCORPORATED,
                    *Defendant-Appellant,*

             and

11.42 ACRES IN WYTHE COUNTY,
VIRGINIA; MARY CASEL,
Commissioner of Revenue; JOHN
DOE, et al.; UNKNOWN OWNERS,
                    *Defendants.*

No. 03-1741

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-182-4)

EAST TENNESSEE NATURAL GAS
COMPANY,

*Plaintiff-Appellee,*

v.

RONNIE LYNN GOFORTH; SUSAN D.
GOFORTH; 3.51 ACRES/WYTHE
COUNTY,                                                                    No. 03-1797

*Defendants-Appellants,*

and

MARY CASEL, Commissioner of
Revenue; JOHN DOE, et al.;
UNKNOWN OWNERS,

*Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-02-215-4)

Argued: September 25, 2003

Decided: March 22, 2004

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Michael wrote the opinion, in
which Judge Niemeyer and Judge Motz joined.

## COUNSEL

**ARGUED:** Joseph Thomas Waldo, WALDO & LYLE, P.C., Nor-
folk, Virginia; William B. Hopkins, Jr., MARTIN, HOPKINS &

LEMON, P.C., Roanoke, Virginia; Gary Michael Bowman, Roanoke, Virginia, for Appellants. Lela Merrell Hollabaugh, WALLER, LANS-DEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellee. **ON BRIEF:** Joseph L. Lyle, Jr., Jeremy P. Hopkins, WALDO & LYLE, P.C., Norfolk, Virginia; Allen Wayne Dudley, Jr., FURROW & DUDLEY, P.C., Rocky Mount, Virginia, for Appellants. Michael S. Mizell, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellee.

---

## OPINION

MICHAEL, Circuit Judge:

The Natural Gas Act (NGA or the Act), 15 U.S.C. § 717f(h), gives a gas company the power to acquire property by eminent domain, but the Act does not provide for immediate possession, that is, possession before just compensation is determined and paid in a condemnation action. The main question in this appeal is whether a gas company can obtain immediate possession through the equitable remedy of a preliminary injunction. We hold that it can. We also hold that the district court properly granted preliminary injunctive relief to the gas company in the several cases consolidated in this appeal; we therefore affirm the injunction orders.

### I.

East Tennessee Natural Gas Company (ETNG) is a regional gas transportation company. Several years ago the company developed plans for what it calls the Patriot Project, a project to construct an interstate gas pipeline, twenty-four inches in diameter and about ninety-four miles long, through portions of Tennessee, Virginia, and North Carolina. Before a gas company like ETNG can build and operate a new pipeline, it must obtain a certificate of public convenience and necessity from the Federal Energy Regulatory Commission (FERC or the Commission). The procedure for obtaining a certificate from FERC is set forth in the NGA, 15 U.S.C. § 717 *et seq.*, and its implementing regulations, 18 C.F.R. § 157.1 *et seq.* The process begins with an application from the gas company that includes,

among other information, (1) a description of the proposed pipeline project, (2) a statement of the facts showing why the project is required, and (3) the estimated beginning and completion date for the project. 15 U.S.C. § 717f(d); 18 C.F.R. § 157.6(b). Notice of the application is filed in the Federal Register, 15 U.S.C. § 157.9, public comment and protest is allowed, *id.* § 157.10, and FERC conducts a public hearing on the application, *id.* § 157.11. As part of its evaluation, FERC must also investigate the environmental consequences of the proposed project and issue an environmental impact statement. *See* 42 U.S.C. § 4332. At the end of the process FERC issues a certificate if it finds that the proposed project "is or will be required by the present or future public convenience and necessity." 15 U.S.C. § 717f(e). In its order issuing a certificate, FERC specifies a date for the completion of construction and the start of service. 18 C.F.R. § 157.20(b). The certificate may include any terms and conditions that FERC deems "required by the public convenience and necessity." *Id.* § 157.20. Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise "the right of eminent domain" over any lands needed for the project. 15 U.S.C. § 717f(h).

On July 26, 2001, ETNG filed its application for a certificate of public convenience and necessity for the Patriot Project. *See Preliminary Determination of Non-Environmental Issues* 1, 98 FERC ¶ 61331, 2002 WL 471183 (2002). Notice of the application was published in the Federal Register on August 9, 2001. *Id.* at 4. Thereafter, approximately 200 interested parties submitted comments or protests, *id.* at 4, appendix, and FERC held several public hearings on the application. FERC released its preliminary determination on March 27, 2002. In this document, which did not cover environmental issues, the Commission found that the Patriot Project would help satisfy the growing energy needs in portions of the three-state area of Tennessee, Virginia, and North Carolina. Specifically, the project would supply gas to new electric generation plants, meet the needs of local utilities for additional gas, and bring gas service to portions of southwestern Virginia for the first time. *Id.* at 15. The preliminary determination also noted that "there may be some adverse impacts on landowners from the construction of the project." *Id.* After weighing these and other factors, FERC concluded that, subject to consideration of environmental issues, the public benefits of the Patriot Project would outweigh any adverse impacts. *Id.* at 1. The Commission then moved to

the environmental review process. Again, the public and interested parties were invited to submit comments and to participate in public meetings. *Order Denying Re-hearing, Authorizing Abandonment, and Issuing Certificate* 13-14, 101 FERC ¶ 61188, 2002 WL 31973796 (2002). On September 22, 2003, the Commission issued its final environmental impact statement (FEIS). *Id.* at 14. The FEIS recommended a number of mitigation measures that ETNG should take to avoid or minimize environmental damage. *Id.* at 14-19. In the end, the FEIS concluded that construction and operation of the Patriot Project would result in limited adverse environmental impacts. *Id.* at 30.

FERC's sixteen-month review of ETNG's application ended on November 20, 2002, when the Commission by formal order issued ETNG a certificate of public convenience and necessity. *Id.* at 1. The FERC order confirms that "[i]ssuance of the certificate . . . permits [ETNG] to acquire land for the pipeline by eminent domain, if it cannot reach agreement with the owner of land authorized." *Id.* at 20. The order requires ETNG to complete construction and make the pipeline available for service by January 1, 2005. *Id.* at 31. As the FEIS recommended, the certificate incorporates sixty-nine conditions that ETNG has to meet during construction. *Id.* at 31-44. Among other things, the conditions require ETNG to: (1) file weekly status reports with FERC during construction, (2) follow the mitigation measures described in the environmental impact statement, (3) employ environmental inspectors to monitor compliance with the mitigation measures, (4) monitor vegetation for at least two growing seasons following the completion of the project, and (5) limit construction to daylight hours.

As soon as FERC issued the certificate to ETNG, the company pursued negotiations with the affected landowners to acquire the easements to construct, operate, and maintain the new pipeline. The line will cross over 1,300 tracts of land in Tennessee, Virginia, and North Carolina. Through negotiations with landowners and a limited amount of condemnation litigation in North Carolina and Tennessee, the company was able to acquire over ninety percent of the right-of-way. That left about 130 tracts in Virginia where easements were still needed. In December 2002 ETNG filed 133 actions in the Western District of Virginia seeking orders of condemnation for the easements over the remaining tracts. Within a couple of months of filing the condemna-

tion actions, ETNG was able to settle with the owners of almost fifty of these tracts, leaving eighty-five or so that were still the subject of litigation.

At the same time ETNG filed the condemnation actions, it filed motions for immediate possession of the easements to prevent delays in construction. The NGA's eminent domain provision is silent on the question of immediate possession, so ETNG contended that the district court could use its "inherent equitable power" to grant this relief. J.A. 22 (joint appendix references are to case no. 03-1708(L)). The landowners filed answers challenging the breadth of ETNG's right to condemn, and they opposed the motions for immediate possession. The district court decided to deal with the litigation in stages, dealing first with the questions about ETNG's right to take. Thereafter, if required, the court would consider the motions for immediate possession, leaving the issue of just compensation in each case for last.

On May 8, 2003, the district court issued several identical opinions holding that ETNG could exercise the right of eminent domain to acquire the necessary easements through the tracts in litigation. In supplemental opinions filed June 6, 2003, the court explained its decision to grant ETNG's motions for immediate possession. The court acknowledged that there is no provision for immediate possession in the NGA. Nevertheless, the court held that it could "use its equitable powers to grant early possession to ETNG in the form of a preliminary injunction." J.A. 76. The court found that ETNG had established its right to immediate possession by satisfying the standards required for a preliminary injunction under *Blackwelder Furniture Co. of Statesville, Inc. v. Selig*, 550 F.2d 185 (4th Cir. 1977). Among other things, the court found that holding up "the project's completion until the compensation for the last parcel is determined" would result in an extended delay. J.A. 78. This delay, the court said, would cause significant financial harm to ETNG and its potential customers. On the other hand, the court found that harm to the landowners would be slight, especially because they had the "right to draw down the money ETNG has deposited with the Court based on [the company's] appraisal." J.A. 78-79. Finally, the court concluded that "expeditious completion of the pipeline is in the public interest." J.A. 79.

The landowners, in several cases that we have consolidated, appeal the district court's preliminary injunction orders granting immediate

possession. The landowners' main argument is that ETNG cannot take possession prior to the determination of just compensation. (The landowners now concede that ETNG has a legal right to take the property.) They further argue that even if the district court had the power to award immediate possession by preliminary injunction, the court erred in granting injunctions in these cases. Finally, some of the landowners claim that the district court lacked jurisdiction over their cases because the complaints did not sufficiently identify the property to be taken.

II.

A.

The first question is whether the district court can use its equitable power to order immediate possession in a condemnation case. We begin our discussion by reviewing the mechanics of how the federal power of eminent domain is usually exercised. Congressional authorization is required for land to be condemned by the government for public use. *See United States v. N. Am. Transp. Co.*, 253 U.S. 330, 333-34 (1920); 1A J. Sackman, Nichols on Eminent Domain § 3.03[1] (rev. 3d ed.). Congress sometimes exercises the power of eminent domain directly by enacting a statute that appropriates specific property. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 5 (1984). Congress's normal practice, however, is to delegate the power of eminent domain to government officers who may condemn property in the name of the United States for public use. And Congress may, as it did in the NGA, grant condemnation power to "private corporations . . . execut[ing] works in which the public is interested." *Boom Co. v. Patterson*, 98 U.S. 403, 406 (1878). Although the federal statutes conferring the power of eminent domain routinely identify the officer who may exercise the power and the purpose for which it may be exercised, the statutes typically do not prescribe the procedural methods or steps for exercising the power. *See, e.g.*, 10 U.S.C. § 2663(a) ("Secretary of a military department may . . . acquire by condemnation any interest in land . . . needed for the site, construction, or operation of fortifications, coast defenses, or military training camps"); 16 U.S.C. § 404c-11 ("The Secretary of the Interior is authorized in his discretion to acquire for inclusion within the Mammoth Cave National Park by . . . condemnation . . . any lands

. . . within the maximum boundaries as authorized by . . . this title."); *see also Kirby*, 467 U.S. 1, 3 n.1 (1984). When a condemnation action becomes necessary, a government official has two statutory methods available for exercising the power of eminent domain. Under the first method, called "straight condemnation," the action usually proceeds to a determination of just compensation and final judgment before the condemnor takes possession. *See* 40 U.S.C. § 3113 (formerly codified at 40 U.S.C. § 257); *Kirby*, 467 U.S. at 3-4. Under the second method, often referred to as "quick-take," the government may take possession of the condemned property at the beginning of the case. *See, e.g.*, 40 U.S.C. § 3114 (formerly codified at 40 U.S.C. § 258a).

In straight condemnation the government official requests the Attorney General to initiate the condemnation action in district court. 40 U.S.C. § 3113. A special rule, Fed. R. Civ. P. 71A, governs the procedure in a condemnation action. *See Kirby*, 467 U.S. at 3-4. Under Rule 71A the complaint must set forth the authority for the taking, the use for which the property is being taken, the identity of the property, and the interest to be acquired. Fed. R. Civ. P. 71A(c)(2). After the complaint is filed, the action proceeds in due course to the determination of just compensation for the owner of the land. *Id.* § 71A(h). Rule 71A does not contain procedures for dealing with issues of pre-judgment possession by the condemning authority. Under traditional procedures, however, the condemning authority takes possession of the property after the determination and payment of just compensation. *See Kirby*, 467 U.S. at 4; 6 Nichols, *supra*, § 24.10[1]. As the Supreme Court indicated in *Kirby*, when just compensation is determined first, "[t]he practical effect . . . is to give the government an option to buy the property at the adjudicated price. If the government wishes to exercise that option, it tenders payment to the private owner, whereupon title and right to possession vest in the United States." *Kirby*, 467 U.S. at 4 (citation omitted). On the other hand, "[i]f the government decides not to exercise its option, it can move for dismissal of the condemnation action." *Id. See also* Fed. R. Civ. P. 71(A)(i)(3).

The second method of taking, prescribed mainly in the Declaration of Taking Act (DTA), provides the government with a more expeditious procedure. 40 U.S.C. § 3114. The DTA's quick-take provisions authorize the government to take immediate possession of condemned

property.* When the government proceeds under the DTA, it files a "declaration of taking" that, among other things, states the authority for the taking, states the public use for which the land is taken, and provides an estimate of just compensation. Once the government deposits the estimated amount with the court, "to the use of the persons entitled to the compensation," title to the condemned property automatically vests in the United States. *Id.* § 3114(a), (b); *Kirby*, 467 U.S. at 4-5. While the DTA gives the government the right of immediate possession, the time and terms of possession are fixed by the district court. 40 U.S.C. § 3114(d)(1). The precise compensation figure is determined later. ETNG did not try to use DTA's quick-take provisions, presumably because the statute only applies to condemnation proceedings "brought by and in the name of the United States." *Id.* § 3114(a).

The Natural Gas Act, like most statutes giving condemnation authority to government officials or private concerns, contains no provision for quick-take or immediate possession. The Act simply says that any holder of a certificate of public convenience and necessity may acquire property "by the exercise of eminent domain in the district court." 15 U.S.C. § 717f(h). The Act further provides that "the practice and procedure in any action or proceeding for that purpose . . . shall conform . . . with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." *Id.* Courts, including the district court here, agree that this state

---

*The DTA gives any government official with condemnation authority the right to take immediate possession. A few statutes give this right to specific officials. *See, e.g.*, 42 U.S.C. § 5196(i)(1) (Director of the Federal Emergency Management Agency may "procure by condemnation or otherwise . . . materials and facilities for emergency preparedness, with the right to take immediate possession thereof"); 33 U.S.C. § 594 (when Secretary of Army is authorized to take lands necessary for harbor improvements, he "shall have the right to take immediate possession"); *see also* 10 U.S.C. § 2663(b) ("In time of war or when war is imminent, the United States may, immediately upon the filing of a petition for condemnation . . . take and use the land to the extent of the interest sought to be acquired."). These scattered statutes appear to be superfluous to the extent they confer the right of immediate possession, unless they allow an even more expeditious process than the DTA. That is not an issue for today, however.

procedure requirement has been superseded by Rule 71A. *See N. Border Pipeline Co. v. 64.111 Acres of Land*, 344 F.3d 693 (7th Cir. 2003); *S. Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1374 (11th Cir. 1999); *see also Kirby*, 467 U.S. at 4 n.2. As we have said, Rule 71A does not provide procedures for allowing early possession. The Advisory Committee that drafted Rule 71A was well aware of the statutes (the DTA was the main one) giving the government the right of immediate possession. The committee considered, but decided against, including procedures in Rule 71A for exercising this right. According to the committee, "the procedure . . . being followed [to allow immediate possession] seems to be giving no trouble, and to draft a rule to fit all the statutes on the subject might create confusion." Fed. R. Civ. P. 71A advisory committee's supplementary report, 11 F.R.D. 222, 228 (Mar. 1951). Rule 71A thus contains no language that prohibits a condemnor from pursuing any available procedures to obtain possession prior to the entry of final judgment. These procedures could include an application for a preliminary injunction under Rule 65(a) because the regular rules of civil procedure apply when Rule 71A is silent. *See* Fed. R. Civ. P. 71A(a).

In any event, if the proceedings in the eighty-five separate cases here had taken their normal course under Rule 71A, ETNG would not have been able to enter each tract until just compensation was determined and paid on that tract. ETNG asserted that determining just compensation first would cause great delay in construction and in placing the pipeline in operation. In order to avoid this delay, ETNG filed its motions for immediate possession, contending that it met the standards for a preliminary injunction. The statute (the NGA) that gives it the power to condemn is silent on the issue of immediate possession, and the company did not seek to assert quick-take authority under the DTA. Thus, the specific question raised before the district court, and now presented on appeal, is whether a court may use its equitable powers to grant a preliminary injunction allowing immediate possession when there is no provision for that relief in the NGA or Rule 71A.

### B.

A federal court has the power to grant equitable relief, *see Gordon v. Washington*, 295 U.S. 30, 36 (1935), but this power is circum-

scribed by the venerable principle that "equity follows the law," *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893). Equity, in other words, may not be used to create new substantive rights. *See, e.g.*, *Norwest Bank of Worthington v. Ahlers*, 485 U.S. 197, 206-07 (1988). However, when a substantive right exists, an equitable remedy may be fashioned to give effect to that right if the prescribed legal remedies are inadequate. *See Berdie v. Kurtz*, 88 F.2d 158, 159 (9th Cir. 1937); *Am. Brake Shoe & Foundry Co. v. N.Y. Rys. Co.*, 293 F. 633, 637-38 (2d. Cir. 1923). The district court followed these principles when it granted ETNG equitable relief in the form of a preliminary injunction that allowed the company to take early possession of the condemned property.

The district court discharged its duty to adjudicate these cases by first taking up the question of whether ETNG had a substantive right to condemn the landowners' property. After considering the briefs of the parties and hearing oral argument, the court issued orders determining that "ETNG has established its right to exercise eminent domain over the [landowners'] property as outlined in the [c]ertificate [of public convenience and necessity issued by FERC]." J.A. 74. These orders gave ETNG an interest in the landowners' property that could be protected in equity if the conditions for granting equitable (in this case, injunctive) relief were satisfied. *See Seymour v. Freer*, 75 U.S. 202, 213-14 (1868)(when a party has an interest in property "distinct from legal ownership," that interest "constitute[s] an equity which a court of equity will protect and enforce"). Therefore, once ETNG's right to take the easements was determined, it was proper for the district court to consider ETNG's motions for equitable relief in the various cases, specifically, its requests for preliminary injunctions granting immediate possession. As the discussion in part III, *infra*, establishes, the district court carefully considered the requirements for granting a preliminary injunction. A preliminary injunction is, of course, "appropriate to grant intermediate relief of the same character as that which may be granted finally." *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945). *See also In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). The district court's holding that ETNG had established its right to condemn meant that it would have been entitled to possession upon the entry of final judgment. Because the court found that the requirements for a preliminary injunction had been met, the court granted immediate posses-

sion to ETNG as a form of intermediate relief. Again, the district court followed established principles and procedures in granting equitable relief. The landowners argue that general principles of equity are inapplicable here because equitable relief in the form of immediate possession is barred in a condemnation case. We disagree.

To begin with, the Constitution does not prevent a condemnor from taking possession of property before just compensation is determined and paid. As the Supreme Court said a long time ago, the Constitution "does not provide or require that compensation be paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed." *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890). Rule 71A provides the procedure for determining just compensation, and ETNG has deposited cash with the court in an amount equal to the appraised value of the interests condemned. If the deposit is somehow short, ETNG will be able to make up the difference. In 2002 ENTG's parent company reported earnings of $1.17 billion from its natural gas transmission division that includes ETNG. There is thus adequate assurance that the landowners will receive their just compensation. *See Wash. Metro. Area Transit Auth. v. One Parcel of Land*, 706 F.2d 1312, 1321 (4th Cir. 1983) (fact that agency could be sued and had substantial assets was sufficient to assure just compensation).

The landowners argue that Congress does not intend for gas companies to gain immediate possession because it has not granted statutory quick-take power to gas companies as it has to government officers who condemn property in the name of the United States. This argument overlooks the preliminary injunction remedy provided in the Federal Rules of Civil Procedure that were adopted with the tacit approval of Congress. *See* 28 U.S.C. §§ 2072, 2074. Two rules are pertinent, Rule 65(a) and Rule 71A. Rule 65(a), which specifically allows for preliminary injunctions, was adopted with the original rules in 1937. Rule 71A, the special rule for condemnation actions, came along later, in 1951. As we have already mentioned, Rule 71A does not include any provisions governing the exercise of immediate possession. Rule 71A provides, however, that the regular rules of procedure apply to any subject not covered by the special rule. Fed. R. Civ. P. 71A(a). Under the rules, then, a gas company with condemnation

power under the NGA may apply under Rule 65(a) for a preliminary injunction awarding immediate possession. The gas company must, of course, establish that it is entitled to equitable relief. Congress has never given any indication that it disapproves of this procedure. Indeed, because Congress has not acted to restrict the availability of Rule 65(a)'s equitable (injunctive) remedy in an NGA condemnation, we conclude that the rule applies. *See Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 291 (1960) ("Equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command.").

The subtext of the landowners' argument that only Congress can grant the right of immediate possession is this: the preliminary injunction process does not provide the landowner with procedural safeguards that are comparable to those provided by Congress in the DTA. We disagree. Although the procedural safeguards in the preliminary injunction process are not a perfect match with those in the DTA, a comparison shows that the landowner is adequately protected when the condemnor obtains immediate possession under either procedure. In a DTA case the government exercises its right to immediate possession with minimal judicial oversight. Title and the right to possession vest in the government immediately upon the filing of a declaration and the requisite deposit. *See* 40 U.S.C. § 3114; *Kirby*, 467 U.S. at 4-5. Although the district court fixes the time and any terms of the possession, the government takes possession of the condemned property as a matter of course, unless the landowner or occupant demonstrates some undue hardship that warrants a delay. *See, e.g.*, *United States v. Certain Land in the Borough of Manhattan*, 332 F.2d 679, 680-82 (2d Cir. 1964) (possession delayed when government sought to oust tenants on five days' notice); *United States v. 6,576.27 Acres of Land*, 77 F.Supp. 244, 246 (D. N.D. 1948) (eviction delayed when "it would be difficult, if not impossible, for . . . farm families to move by the date fixed in the order"). In a condemnation case under the NGA, a gas company that seeks immediate possession has a much stiffer burden than the government does under the DTA. Because title in an NGA case does not pass until compensation is determined and paid, *see Danforth v. United States*, 308 U.S. 271, 284-85 (1939), the company's motion for immediate possession triggers a threshold requirement. The district court must determine that the company has the right to condemn the property in question. *See*

*Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 299, 301 (N.D. Ill. 2002). Once the right to condemn is established by court order, it follows that the company will be entitled to possession when title is transferred at the end of the case. The question then becomes whether the relief that will be appropriate at the end (that is, possession) should be granted at an earlier stage. To obtain this intermediate relief, the gas company must satisfy the strict requirements for a preliminary injunction. For example, the company must demonstrate that it will suffer irreparable harm without immediate possession, and the company's harm must be weighed against any harm to the landowner. *See Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 859 (4th Cir. 2001). In this case ETNG was awarded possession only after it engaged in five months of intensive litigation that analyzed and determined its right to take and its right to equitable relief (an injunction).

In comparing the protections of the DTA to those in injunction proceedings, we return briefly to the matter of title and the payment of just compensation. Again, title passes immediately to the government under the DTA. There is the possibility, of course, that the government, in making its deposit to cover compensation, will underestimate the value of the land. In that case, the landowner is protected because the government undertakes to pay the difference between the adjudicated value of the land and the deposit. *Kirby*, 467 U.S. at 5. In an NGA condemnation where early possession is granted to a gas company, the landowner is protected in a different way, that is, by "the rule that title does not pass until just compensation has been ascertained and paid." *Danforth*, 308 U.S. at 284-85. Therefore, if the gas company's deposit (or bond) is less than the final compensation awarded, and the company fails to pay the difference within a reasonable time, "it will become a trespasser, and liable to be proceeded against as such." *Cherokee Nation*, 135 U.S. at 660. Likewise, if a FERC-regulated gas company was somehow permitted to abandon a pipeline project (and possession) in the midst of a condemnation proceeding, the company would be liable to the landowner for the time it occupied the land and for any "damages resulting to the [land] and to fixtures and improvements, or for the cost of restoration." 4 J. Sackman, Nichols on Eminent Domain § 12E.01[07] (rev. 3d ed). *See also* Fed. R. Civ. P. 71A(i)(3) (district court "shall not dismiss [condemnation] action as to any part of the property of which the plaintiff

has taken possession or in which the plaintiff has taken title or a lesser interest, but shall award just compensation for the possession, title or lesser interest taken"). For all of these reasons, we conclude that when a gas company initiating a condemnation action under the NGA seeks immediate possession by preliminary injunction, there are sufficient safeguards in place to protect the landowner.

The landowners also argue that because statutes granting the power of eminent domain must be strictly construed, equity cannot be invoked to supply the remedy of immediate possession. This argument is rooted in the principle that "[t]he grant of authority to condemn for specific purposes must be construed as limited to the enumerated purposes." 1A Nichols, *supra*, § 3.03[3][d]. The property in this case is being condemned for the strict purpose authorized by the NGA, to build a pipeline that FERC deems necessary to supply natural gas. Moreover, our circuit has never interpreted the strict construction principle to mean that equity cannot allow for the possession of property condemned under the NGA before a case is finally ended. In *Atlantic Seaboard Corp. v. Van Sterkenburg*, 318 F.2d 455 (4th Cir. 1963), a natural gas company sought possession of an easement for a new pipeline while the landowner appealed his award of just compensation. The district court authorized possession conditioned on the company's deposit of the award into the court's registry account. The landowner also appealed the order granting possession, arguing that Rule 71A did not authorize the district court to provide such relief. Our court recognized that Rule 71A did not spell out procedures for the grant of early possession. Nevertheless, our court said that "inherently, the condemnation court possesses the power to authorize immediate entry by the condemnor upon the condemned premises." *Id.* at 460. In upholding the order of early possession, our court observed that a landowner, protected by a deposit, should not be allowed "to postpone the condemnor's enjoyment of the premises, imposing upon the condemnor great, perhaps irreparable damage, all without risk of further loss or injury to the owner." *Id.* We recognize, of course, that the *Atlantic Seaboard* case was much further along than today's case when possession was authorized. Nevertheless, *Atlantic Seaboard* demonstrates that a court may use its equitable power to authorize early possession.

Finally, the landowners' argument that equity cannot be invoked here ignores the fact that there is a substantial public interest — the

need for natural gas supply — at stake in this case. As the Supreme Court has said, courts of equity may go to greater lengths to give "relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Va. Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937). *See also United States v. Morgan*, 307 U.S. 183, 194 (1939); *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 497 (4th Cir. 1999). FERC spent sixteen months evaluating the need for the Patriot Project. Ultimately, it concluded that the project was required by the public convenience and necessity. It was therefore appropriate for the district court to weigh the public benefit of expeditious project construction in deciding that it could use its equitable power in this case.

District courts in a number of jurisdictions have done exactly what the district court did here, that is, grant immediate possession in the form of a preliminary injunction to a gas company that has established its right to condemn under the NGA. *See Northwest Pipeline Corp. v. The 20' by 1,430' Pipeline Right of Way*, 197 F.Supp.2d 1241, 1245 (E.D. Wash. 2002)("[w]here there is no dispute about the validity of [the gas company's] actual right to the easement," denying authority to grant immediate possession "would produce an absurd result"); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D. Ill. 2002)(immediate possession proper when condemnation order has been entered and preliminary injunction standards have been satisfied); *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F.Supp.2d 299, 301 (N.D. Ill. 2000)(same); *see also N. Border Pipeline Co. v. 127.79 Acres of Land*, 520 F.Supp. 170, 173 (D. N.D. 1981) ("the Court believes the circumstances of this case warrant the exercise of inherent powers"); *Williston Basin Interstate Pipeline Co. v. Easement and Right-of-Way Across .152 Acres of Land*, 2003 WL 21524816 (D. N.D. 2003)(same); *Tenn. Gas Pipeline Co. v. New England Power, Inc.*, 6 F.Supp.2d 102, 104 (D. Mass. 1998)(same); *USG Pipeline Co. v. 1.74 Acres*, 1 F.Supp.2d 816, 825-26 (E.D. Tenn. 1998)(same); *Kern River Gas Transmission Co. v. Clark County*, 757 F.Supp. 1110, 1117 (D. Nev. 1990)(same); *Humphries v. Williams Natural Gas Co.*, 48 F.Supp.2d 1276, 1280 (D. Kan. 1999)("[I]t is apparently well settled that the district court does have the equitable power to grant immediate entry and possession [under the NGA]."); *Rivers Electric Co., Inc. v 4.6 Acres of Land*, 731 F.Supp. 83, 87 (N.D. N.Y. 1990)(granting immediate pos-

session under a statute similar to the NGA). *Cf. Commercial Station Post Office, Inc. v. United States*, 48 F.2d 183, 184-85 (8th Cir. 1931)(holding that government officer who exercises statutory authority to file condemnation action may take immediate possession of the property even though there is no express provision authorizing pre-judgment possession).

One circuit case, *Northern Border Pipeline Co. v. 86.72 Acres of Land*, 144 F.3d 469 (7th Cir. 1998), has held that a district court lacked authority to grant a condemnor immediate possession under the NGA. But that case involved an entirely different set of circumstances than those presented here. Specifically, the gas company in *Northern Border* did not obtain an order determining that it had the right to condemn before it sought a preliminary injunction. Its motion for an injunction was based entirely on the existence of a certificate of public convenience and necessity. Under those circumstances, the Seventh Circuit held that the gas company had no right to equitable relief because the company "did not present an argument grounded in substantive law establishing a preexisting entitlement to the property." *Id.* at 472. Two district court decisions in the Seventh Circuit have interpreted *Northern Border* to mean that immediate possession is improper only when there has been no order confirming the right to condemn. *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F.Supp.2d 299, 301 (N.D. Ill. 2000)("in this case, plaintiff does have a preexisting entitlement to the easements, the judgments of condemnation, which make an award of possession appropriate"); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D. Ill. 2002)(same). We agree with the assessment of the two district courts. The gas company in *Northern Border* had simply failed to seek an order determining that it had the right to condemn. Without having that right in substantive law determined, the company could not invoke equity.

In summary, the district court followed established principles of equity in determining that it had the power to award preliminary injunctive relief to ETNG in the form of immediate possession. Neither the Constitution, nor Congress, nor Rule 71A bars this sort of relief in a condemnation case. In this case, the public interest factor — the need for natural gas in a region with little or no service — made it especially appropriate for the district court to consider equita-

ble relief that would allow expeditious construction of the pipeline. A number of district courts around the country have also determined that they have the equitable power to grant immediate possession to a gas company filing a condemnation action under the NGA. We agree with this position. Accordingly, we hold that once a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction.

### III.

Because the district court had the authority to grant immediate possession through a preliminary injunction, we must consider the landowners' alternative argument that ETNG does not satisfy the basic requirements for a preliminary injunction. We review the decision to grant a preliminary injunction for abuse of discretion. Factual determinations are reviewed for clear error and legal conclusions de novo. *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 859 (4th Cir. 2001). In deciding whether to grant a preliminary injunction, a court should consider (1) the likelihood of irreparable harm to the plaintiff if the injunction is denied, (2) the likelihood of harm to the defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193-96 (4th Cir. 1977). The district court issued preliminary injunction orders that mandated affirmative relief (immediate possession) to ETNG. We have said that "[m]andatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). *See also In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). We will now review the district court's preliminary injunction decision, starting with the *Blackwelder* factors.

1.   *The likelihood of irreparable harm to ETNG.*

The district court found that without a preliminary injunction the Patriot Project would suffer "undue delay" and that this delay would cause "significant financial harm both to ETNG and some of its puta-

tive customers." J.A. 78. This finding has ample support in the record. The court pointed out that separate hearings on compensation would be required for each of the eighty-five tracts involved. Scheduling and conducting those hearings, the district court noted, "will obviously take an extended period of time." J.A. 78. ETNG estimated that if possession on some tracts was deferred until completion of the hearings, construction could be delayed until the Summer of 2004 or beyond. Constructing a ninety-four-mile pipeline is a complex project that can only progress in phases. Certain portions of the project have to be completed before construction can begin on other portions. Therefore, as the district court recognized, "any single parcel has the potential of holding up the entire project." J.A. 78. Continuing, the court said, "[t]o require ETNG to build up to a parcel of land [it] do[es] not possess, skip that parcel, and then continue on the other side would prove wasteful and inefficient." *Id.* Furthermore, ETNG is under an order from FERC to complete construction and have the pipeline in operation by January 1, 2005. It would not be possible to meet FERC's deadline without a preliminary injunction.

ETNG is also under contractual obligation to provide natural gas to several electric generation plants and local gas utilities by certain dates. Without a preliminary injunction, ETNG would be forced to breach these contracts. ETNG's inability to satisfy these commitments would have negative impacts on its customers and the consumers they serve. For example, two electric generation plants will not be able to operate at full capacity without natural gas from the Patriot Project. A North Carolina gas utility may not be able to meet its customers' demand for gas if ETNG does not complete the project on time. ETNG estimates that it would lose in excess of $5 million if construction delay caused it to breach its contractual obligations to supply gas. Finally, delay in the construction of the pipeline would hinder economic development efforts in several Virginia counties.

2.    *The likelihood of harm to the landowners.*

The landowners claim that ETNG's early possession will disturb the productive capacity of their land. This is simply a timing argument because productive capacity would still be disturbed, albeit at a later time, if just compensation was determined first. In any event, as the district court observed, the early loss of use argument "is

blunted by [the landowners'] right to draw down the money ETNG has deposited with the Court based on ETNG's appraisal," that is, an independent appraisal obtained by the company. J.A. 78-79. The landowners also argue that by awarding ETNG early possession, the district court undermined their ability to negotiate a favorable price for their land. This argument is unconvincing because the Fifth Amendment guarantees the landowners just compensation for their land no matter when the condemnor takes possession. Finally, the landowners argue that taking property before determining just compensation constitutes a type of inherent harm that is irreparable, especially when lands have been held in the same family for many years. We fully understand that condemnation often forces landowners to part with land that they would prefer to keep for many reasons, including sentimental ones. However, the Supreme Court long ago recognized that "in view of the liability of all property to condemnation for the common good, loss to the owner of nontransferable values deriving from his unique need for property or idiosyncratic attachment to it . . . is properly treated as part of the burden of common citizenship." *Kimball Laundry Co. v. United States*, 338 U.S. 1, 5 (1949). In the end, the district court concluded that the harm to the landowners due to early possession is "slight at best." J.A. 79. The record supports this conclusion, and any harm to the landowners is clearly outweighed by ETNG's immediate need for the property.

   3.   *The likelihood that ETNG will succeed on the merits.*

   ETNG has a determination on the merits that it has a right to condemn the landowners' property, and the landowners now concede that ETNG possesses this right. Success on the merits for ETNG is therefore apparent.

   4.   *The public interest.*

   The district court concluded that "expeditious completion of the pipeline is in the public interest." J.A. 79. Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices. *Clark v. Gulf Oil Corp.*, 570 F.2d 1138, 1145-46 (3d Cir. 1977); *Fla. Power & Light Co. v. Federal Energy Regulatory Comm'n*, 598 F.2d 370, 379 (5th Cir. 1979); *Public Serv.*

*Comm'n of Ky. v. Federal Energy Regulatory Comm'n*, 610 F.2d 439, 442-43 (6th Cir. 1979). As the district court observed, FERC conducted a careful analysis of the Patriot Project and determined that the project will promote these congressional goals and serve the public interest. The project serves the public interest because, among other things, it will bring natural gas to portions of southwest Virginia for the first time. This will make gas available to consumers, and it will help in the efforts of local communities to attract much-needed new business. On a larger scale, the pipeline will make gas available for electric power generation plants. A delay in construction would postpone these benefits.

Because our review must be "more searching when the preliminary injunctive relief ordered by the district court is mandatory," *Microsoft Antitrust Litig.*, 333 F.3d at 525, we will consider whether the circumstances are sufficiently demanding for the award of mandatory relief. We conclude that they are. First, ETNG's right to take the easements for the Patriot Project is indisputably clear, as the district court determined. Second, a federal agency, FERC, determined that the project is necessary to serve the public interest, specifically, the public need for natural gas in areas that have no gas service or that are underserved. To assure that these needs are met in good time, FERC has ordered ETNG to complete the project by January 1, 2005. Third, ETNG could not meet FERC's deadline without immediate possession. And without this mandatory relief, ETNG would face other irreparable harm such as increased construction costs and losses from its breach of gas supply contracts. Preliminary injunctive relief of a mandatory nature was therefore appropriate in these cases.

After considering the *Blackwelder* factors and the propriety of mandatory relief, we conclude that the district court did not abuse its discretion in entering the preliminary injunction orders in these cases.

## IV.

Some of the landowners argue that the district court lacked jurisdiction over their cases because ETNG's condemnation complaints did not sufficiently identify the property to be taken. Rule 71A(c)(2) requires a condemnation complaint to include "a description of the property sufficient for its identification." Fed. R. Civ. P. 71A(c)(2).

Each of ETNG's complaints provides a legal description of the tract of land through which the pipeline will run and a detailed plat showing the location of the easement. In instances where construction considerations have required a change in location, amended plats have been filed with the district court and provided to the landowners. All of this is sufficient to satisfy Rule 71A(c)(2) and any jurisdictional requirement relating to property descriptions. *See S. Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1375 (11th Cir. 1999); *Guardian Pipeline, L.L.C. v. 529.42 Acres of Land*, 210 F.Supp.2d 971, 975 (N.D. Ill. 2002).

V.

In sum, we hold that once a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may use its equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction. Because the district court did not abuse its discretion in granting preliminary injunctive relief to ETNG in these cases, we affirm the district court's orders.

*AFFIRMED*.