(2008)
TRANSWESTERN PIPELINE COMPANY, LLC, a Delaware limited liability company, Plaintiff,
v.
9.32 ACRES, MORE OR LESS, OF PERMANENT EASEMENT LOCATED IN MARCIA COUNTY, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
1.62 acres, more or less, of permanent easement located in Maricopa County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
3.79 acres, more or less, of permanent easement located in Maricopa County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
3.42 acres, more or less, of permanent easement located in Maricopa County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
4.1 acres, more or less, of permanent easement located in Maricopa County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
1.60 acres, more or less, of permanent easement located in Maricopa County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
46.78 acres, more or less, of permanent easement located in Maricopa County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
3.51 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
5.47 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
5.99 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
6.05 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
3.97 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
3.88 acres, more or less, of permanent easement located in Maricopa County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
.65 acre, more or less, of permanent easement located in Maricopa County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
2.71 acres, more or less, of permanent easement located in Maricopa County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
3.21 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
10.39 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
3.04 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
1.45 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
1.55 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
.53 acre, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
.76 acre, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
2.29 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
.43 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
21.87 acres, more or less, located in Maricopa County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
2.95 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
16.74 acres of property, more or less, located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
.28 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
v.
3.52 acres, more or less, of permanent easement located in Pinal County, et al., Defendants.
Transwestern Pipeline Company, LLC, a Delaware limited liability company, Plaintiff,
14.35 acres, more or less, of permanent easement, located in Maricopa County, et al., Defendants.
Nos. 2:07-cv-02287-JWS, 2:07-cv-2288-JWS, 2:07-cv-2292-JWS, 2:07-cv-2294-JWS, 2:07-cv-2301-JWS, 2:07-cv-2311-JWS, 2:07-cv-2312-JWS, 2:07-cv-2321-JWS to 2:07-cv-2325-JWS, 2:07-cv-2346-JWS, 2:07-cv-2350-JWS, 2:07-cv-2357-JWS, 2:07-cv-2364-JWS, 2:07-cv-2365-JWS, 2:07-cv-2371-JWS, 2:07-cv-2374-JWS, 2:07-cv-2376-JWS, 2:07-cv-2377-JWS, 2:07-cv-2379-JWS, 2:07-cv-2380-JWS, 2:07-cv-2488-JWS, 2:07-cv-2540-JWS, 2:07-cv-2576-JWS, 2:07-cv-2591-JWS, 2:07-cv-2633-JWS, 2:08-cv-0003-JWS, 2:08-cv-0033-JWS.
United States District Court, D. Arizona.
April 17, 2008.

ORDER AND OPINION
JOHN W. SEDWICK, District Judge.

I. MOTIONS ADDRESSED
In each of the cases listed in the caption to this order there is pending either a motion styled "Transwestern Pipeline Company's Renewed Motion for Preliminary Injunction Permitting Immediate Entry and Use of the Defendant Properties" or a motion styled "Plaintiffs Renewed Motion for Immediate Access and Possession." The motions were fully briefed. A two and a half day evidentiary hearing concerning the motions was conducted in Phoenix beginning on April 8, 2008. Oral argument on the motions was heard on the afternoon of April 10, 2008. This order addresses the motion in each of the cases listed in the caption.

II. BACKGROUND
In complaints filed in approximately 130 cases, plaintiff Transwestern Pipeline Company, LLC ("Transwestern") sought to obtain certain property interests for use in the construction, maintenance, and operation of a natural gas pipeline transmission system known as the Phoenix Expansion Project. The litigation is based upon a Certificate of Public Convenience and Necessity ("Certificate") issued by the Federal Energy Regulatory Commission ("FERC") on November 15, 2007, and a provision in the Natural Gas Act, 15 U.S.C. § 717, et seq. ("NGA"), which authorizes the holder of a Certificate to exercise the power of eminent domain via litigation in state or federal court.[1]
Transwestern filed motions seeking to consolidate all of the cases in which Transwestern is represented by the law firm of Ryley, Carlock and Applewhite. The court granted the motion with respect to those cases for the limited purpose of deciding a motion for preliminary injunction pursuant to which Transwestern seeks to obtain immediate possession of the necessary property interests. In a relatively small number of cases, Transwestern is represented by the law firm of Morrill and Aronson. No motion to consolidate was filed in those cases, but at Transwestern's request the court ordered that the motions seeking immediate possession in those cases would be heard at the same time as the motions for preliminary injunction in the consolidated cases.
It is important to note that there are numerous cases in which there is a motion on file seeking injunctive relief granting immediate possession not addressed in this order. Those cases fall into one of three groups: cases in which the motion was not filed soon enough to allow complete briefing prior to the hearing, cases in which no opposition was filed to the motion (sometimes because there is a pending settlement or a party has not appeared), and cases in which an opposition was filed but thereafter some form of settlement was reached. The last category grew even during the course of the evidentiary hearing when the court was advised that certain cases which were not resolved when the hearing commenced had been resolved prior to its conclusion.

III. DISCUSSION
Congress found that the transportation of natural gas in interstate and foreign commerce is an activity which should be subject to federal regulation.[2] In the NGA and in the Natural Gas and Hazardous Materials Pipeline Safety Act, 49 U.S.C. § 60101, et seq., Congress created a comprehensive scheme for the regulation of that activity. As the Supreme Court has noted, the NGA literally occupied the field leaving no source of rights and obligations save those created by federal law.[3]
At the center of the dispute presently before the court is a provision in the NGA, 15 U.S.C. § 717f(h), which provides in part as follows:
When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to the right-of-way, for the location of compressor stations [and other devices needed] for the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain [in federal or state court].[4] According to the NGA, which was enacted in 1938 (long before the creation of a federal rule of civil procedure governing condemnation practice in federal courts), the practice and procedure in such cases filed in federal court must conform as closely as possible to the practice and procedure in the state court where the property is located.[5] Subsequent to the creation of what was originally Fed.R.Civ.P. 71A (now Rule 71.1), courts have recognized that the practice and procedure in federal court in cases brought pursuant to the NGA's delegation of eminent domain powers is governed by the federal rule, not state practice and procedure.[6]
Transwestern's motions depend on the proposition that this court has the power to grant equitable relief awarding plaintiff immediate possession of the desired rights-of-way. The parties' briefing and arguments may be taken to suggest four sources of that power: the NGA, Rule 71.1, Rule 65, and case law invoking the court's "inherent equitable powers." The court considers each of these possible sources of authority below.
The NGA itself includes no explicit provision stating that the holder of a FERC Certificate has a right to immediate possession of property. The question thus becomes whether such a right may be implied in the NGA. To evaluate that possibility, it is instructive to consider the provisions of federal law which authorize the United States itself to exercise eminent domain powers.
With respect to the United States' own condemnation powers, there are two statutes of general application. One is 40 U.S.C. § 3113 which authorizes the United States to acquire interests in real estate including rights-of-way "by condemnation under judicial process." Like the provision in the NGA, this statute is silent on the question of a right to immediate possession. The other statute of general application authorizing the United States to exercise eminent domain powers is 40 U.S.C. § 3114, the Declaration of Taking Act ("DTA"). Unlike 40 U.S.C. § 3113 and § 717f(h) of the NGA, the DTA expressly authorizes the United States to immediately acquire possession of interests in real property, including rights-ofway, pursuant to a declaration of taking. Upon the filing of a properly executed declaration and deposit of funds in federal court, title to the interest sought vests in the United States and the land "is condemned and taken." The absence of a similar "quick-take" provision in the NGA demonstrates to this court's satisfaction that the NGA itself cannot be read to provide the holder of a Certificate with a right to immediate possession. This conclusion is bolstered by the language of § 717f(h) which clearly contemplates that a Certificate holder will proceed by negotiating a contract with the owner of the interest sought and may resort to eminent domain proceedings only when that process fails.
In fairness to Transwestern's very able lawyers, it must be noted that their briefing stops short of suggesting that the NGA creates a right of immediate possession. Rather, the court understands Transwestern to assert a less expansive proposition: The holder of a Certificate has a right to possession upon completion of the eminent domain proceedings. Starting from that premise, Transwestern then urges that the case law supports the conclusion that this more modest statutory right can be amplified by filtering it through Rule 71.1, Rule 65, and the court's inherent equitable powers to support a Certificate holder's right to immediate possession.
Before turning to the case law cited by the parties invoking a court's inherent equitable powers, it is useful to examine Rule 71.1 and Rule 65. Rule 71.1 provides, "These rules govern proceedings to condemn real and personal property by eminent domain, except as this rule provides otherwise." It is undisputed that Rule 71.1 does not contain a mechanism for granting immediate possession. Transwestern argues, however, that the fact that the NGA and Rule 71.1 do not expressly provide for a quick-take procedure does not mean the court cannot grant preliminary injunctive relief pursuant to Rule 65. Rather, Transwestern contends that it may seek injunctive relief under Rule 65 because "Rule 71.1 specifically provides that the other rules of civil procedure apply, unless the issue is specifically addressed, and, thus governed by Rule 71.1."[7]
To begin with, it must be observed that Rule 71.1 is a procedural rule. It forms part of the Federal Rules of Civil Procedure whose express purpose is "to govern the procedure" in civil cases in the district courts of the United States.[8] It is well recognized that the federal rules of civil procedure are just that, and cannot be used to abridge, enlarge or modify substantive rights.[9] Transwestern essentially concedes this point in stating, "Rule 71A governs procedurally and the NGA substantively."[10]
Similarly, Rule 65 sets forth the procedures for issuing a preliminary injunction, but does not create substantive rights. The substantive rights must come from another source. Here, the source relied on is the NGA. The NGA sets forth two methods by which Transwestern may obtain possession of the property at issue: 1) by negotiation and 2) by completing a condemnation process. As to the parcels of land at issue in the these motions, Transwestern has not successfully negotiated and it has not completed the condemnation process. Accordingly, Transwestern has no present interest in the subject property to be protected by a preliminary injunction under Rule 65.
Moving on to the case law cited in the parties' briefing, it must be observed at the outset that there are only two circuit court opinions on point, and they are incompatible with one another. The two cases are Northern Border Pipeline Co. v. 86.72 Acres of Lmid,[11] and East Tennessee Natural Gas Co. v. Sage.[12] In Northern Border, the Seventh Circuit affirmed the district court's denial of Northern Border Pipeline Company's motion for a preliminary injunction which would have given the company immediate possession of the land at issue. The Seventh Circuit based its decision on the well-established premise that "[a] preliminary injunction may issue only when the moving party has a substantive entitlement to the relief sought."[13] The Seventh Circuit ruled that because Northern Border did not present an argument grounded in substantive law establishing "that it has a substantive entitlement to the defendants' land right now, rather than an entitlement that will arise at the conclusion of the normal eminent domain process, Northern Border is not eligible for the relief it seeks."[14] Therefore, the Seventh Circuit ruled that "the district court had no authority to enter a preliminary injunction awarding immediate possession."[15]
In Sage, on the other hand, the Fourth Circuit affirmed the district court's order granting East Tennessee Natural Gas Company's motions for preliminary injunction providing for immediate possession. On appeal, the issue before the Fourth Circuit was "whether a [district] court may use its equitable powers to grant a preliminary injunction allowing immediate possession when there is no provision for that relief in the NGA or Rule [71.1]."[16] The Fourth Circuit held that "once a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction."[17]
The Fourth Circuit began its analysis with the suppositions that a federal court has the power to grant equitable relief and that "[e]quity ... may not be used to create new substantive rights."[18] The Fourth Circuit found that the district court followed the above principles because prior to granting the gas company's motions for immediate possession, the district court first issued orders determining that the gas company had a right to exercise eminent domain over the landowners' property as outlined in the FERC certificate. The Fourth Circuit asserted that "[t]hese orders gave [the gas company] an interest in the landowners' property that could be protected in equity if the conditions for granting equitable (in this case, injunctive) relief were satisfied."[19]
The Fourth Circuit attempted to distinguish its decision from the Seventh Circuit's holding that a district court lacked authority to grant a private condemnor immediate possession under the NGA by reasoning that Northern Border "involved an entirely different set of circumstances than those presented here."
Specifically, the gas company in Northern Border did not obtain an order determining that it had the right to condemn before it sought a preliminary injunction. Its motion for an injunction was based entirely on the existence of a certificate of public convenience and necessity.... The gas company in Northern Border had simply failed to seek an order determining that it had the right to condemn. Without having that right in substantive law determined, the company could not invoke equity.[20]
The Fourth Circuit essentially suggests that by issuing an order confirming the gas company's right to condemn property, a district court creates an interest in a landowner's property that can be protected in equity. This court does not find the Fourth Circuit's analysis persuasive. Moreover, having carefully reviewed the district court's order, this court is convinced that the district court's order did not do anything. Simply put, the district court's order did not give the gas company anything that it did not already have, namely the eminent domain authority granted under § 717f(h) of the NGA to the holder of a FERC certificate who cannot acquire by contract or negotiation a necessary right-of-way.
A closer look at the district court's order and opinions is warranted. In its order and opinion dated May 8, 2003, the district court granted plaintiffs motion for possession pursuant to Rule 71A, concluding, "As the defendants have been unable to provide any sound reason why [the court] should not enforce the plaintiffs FERC Certificate, I find that ENTG has established its right to exercise eminent domain over the defendants' property as outlined in the Certificate." While the district court represents that the sole purpose of its opinion is to address plaintiffs right to condemn the defendants' property, the opinion further states, "The plaintiffs motion for immediate possession will be GRANTED and an appropriate order entered."[21]
In a supplemental opinion dated June 6, 2003, the district court noted that its May 8, 2003 order and opinion had failed to address defendants' arguments against the gas company's motion for immediate possession of the land at issue. Defendants had argued that because Congress did not include the right to immediate possession in the NGA as it has in other statutes such as the DTA, an exercise of the court's equitable powers to grant the right to immediate possession would in effect amend the NGA and usurp Congress' legislative powers. The district court rejected defendants' argument, stating:
As I see it, Congress did not give a private condemnor the right to immediate possession so that this issue would be left to the courts to consider on a case-by-case basis. By so doing, the condemnor would be under the supervision of the court rather than having carte blanc authority to enter the property. Thus, Congress entrusted the issue of immediate possession to the equitable powers of the Court.[22]
The district court's conclusion that "Congress entrusted the issue of immediate possession to the equitable powers of the Court" amounts to nothing more than ipse dixit.[23] For the reasons stated above, this court finds the Seventh Circuit's decision in Northern Border persuasive, and the Fourth Circuit's analysis in Sage unconvincing.
Transwestern also cited numerous district court cases in support of its argument that the holder of a FERC Certificate is entitled to equitable relief in the form of a preliminary injunction granting immediate possession of property prior to the determination of just compensation and the entry of a condemnation judgment.[24] None of the cited district court cases are controlling authority, nor do they offer persuasive authority. The referenced district court cases do not cite any substantive authority for granting quick-take power to private gas companies. To the contrary, the district courts readily acknowledge that neither the NGA nor any other federal statute grants private gas companies quicktake power or the right to immediate possession. The district courts then go on to invoke their "inherent equitable powers" to justify granting quick-take power to private gas companies by issuing preliminary injunctions providing for immediate access and possession.[25]
The district courts' reliance on the exercise of inherent equitable powers in granting immediate possession is misplaced. Turning first to the concept of a court's inherent authority, it is instructive to consider the Supreme Court's teaching in Chambers v. NASCO, Inc.:
It has long been understood that "[c]ertain implied powers must result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court because they are necessary to the exercise of all others." * * * For this reason, "courts of justice are universally acknowledged to be vested, by their very creation, with the power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates." * * * These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly expeditious disposition of cases." * * *[26]
In Chambers, the Court went on to say that it had approved the use of a federal court's inherent powers in such circumstances as controlling the admission of attorneys to practice before it, disciplining lawyers who appear before it, punishing contempt, vacating a judgment found to have resulted from a fraud on the court, barring unruly defendants from the courtroom, dismissing litigation for failure to prosecute, and assessing attorney's fees in certain limited circumstances.[27]
A survey of reported Ninth Circuit decisions for the past ten years shows that the bulk of litigation reaching the appellate court involving use of a court's inherent power relates to the use of that power to impose sanctions. Aside from cases in which sanctions imposed on one party benefitted another, no case has been located in which the Ninth Circuit upheld (or even discussed) the proposition that a court's inherent powers can provide the source for a litigant's remedy. It is this court's conclusion that the general jurisprudence defining and applying the concept of inherent judicial power does not support the proposition that such a power can be used to give Transwestern the right to immediate possession of real property which it seeks to enforce in the motions before the court.
This court is equally convinced that a district court cannot use equity to grant private gas companies quick-take power. As the Ninth Circuit long ago recognized, "The cradle of equity is the power to afford adequate remedy where the law is impotent; it does not create new rights, but affords a remedy for existing rights."[28] Here, the law is not impotent but affords private gas companies an adequate remedy under § 717f(h) of the NGA. That provision grants private gas companies the right to exercise eminent domain through condemnation proceedings; it does not grant private gas companies the right to exercise quick-take power. This court declines to invoke its inherent equitable powers to grant Transwestern a right that Congress has chosen to withhold.

IV. CONCLUSION
For the reasons set out above, the motion styled "Transwestern Pipeline Company's Renewed Motion for Preliminary Injunction Permitting Immediate Entry and Use of the Defendant Properties" or "Plaintiffs Renewed Motion for Immediate Access and Possession" is DENIED in each of the cases listed in the caption to this order.
NOTES
[1] 15 U.S.C. § 717f(h).
[2] 15 U.S.C. § 717(a).
[3] Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988) (Congress has committed the matter of natural gas transportation regulation to federal control).
[4] 15 U.S.C. § 717f(h).
[5] Id.
[6] E.g., Southern Natural Gas Co. v. Land, Cullman County, 197 F.3d 1368, 1375 (11th Cir. 1999) (Rule 71A supersedes 15 U.S.C. § 717f(h)).
[7] Case No. 2:cv-07-2287, doc. 86 at p. 34.
[8] Fed.R.Civ.P. 1.
[9] John R. Alley & Co. v. Federal Nat. Bank, of Shawnee, Shawnee County, Okl., 124 F.2d 995 (10th Cir.1942); Synanon Church v. United States, 557 F.Supp. 1329, 1330 n. 2 (D.D.C. 1983); Weinerv. Bank of King of Prussia, 358 F.Supp. 684, 688 (D.Pa.1973) (procedural rule cannot be source of substantive element).
[10] Case No. 2:cv-07-2287, doc. 49 at p. 27.
[11] 144 F.3d 469 (7th Cir.1998).
[12] 361 F.3d 808 (4th Cir.2004).
[13] Northern Border, 144 F.3d at 471.
[14] Id. (italics in original).
[15] Id. at 472.
[16] Sage, 361 F.3d at 823.
[17] Id. at 828.
[18] Id.
[19] Id. at 823.
[20] Id. at 827-828.
[21] Order and Memorandum Opinion (dated May 8, 2003) at p. 17, East Tennessee Natural Gas Co. v. 2.19 Acres in Carroll County, Case No. 4:02-cv-00100 (W.D.Va.).
[22] Supplemental Memorandum Opinion (dated June 6, 2003) at p. 2, East Tennessee Natural Gas Co. v. 2.19 Acres in Carroll County, Case No. 4:02-cv-00100 (W.D.Va.).
[23] In addition to the district court's orders, the Fourth Circuit also cites Atlantic Seaboard Corp. v. Van Sterkenburg, 318 F.2d 455, 460 (4th Cir.1963), as authority for the proposition that "the condemnation court possesses the power to authorize immediate entry by the condemnor upon the condemned premises." Atlantic Seaboard is not on point because in that case a judgment of condemnation was entered and an award of compensation paid into the court's registry prior to the court's authorization of immediate entry.
[24] E.g., Northern Border Pipeline Company v. 127.79 Acres of Land, 520 F.Supp. 170 (D.N.D.1981); USG Pipeline Company v. 1.74 Acres in Marion County, Tennessee, 1 F.Supp.2d 816 (E.D.Tenn.1998); Northwest Pipeline Corp. v. The 20' × 1,430' Pipeline Right of Way Easement, 197 F.Supp.2d 1241, 1245 (E.D.Wash.2002); Guardian Pipeline L.L.C. v. 950.80 Acres of Land, 210 F.Supp.2d 976, 979-980 (N.D.IIl.2002).
[25] Jeremy P. Hopkins & Elisabeth M. Hopkins, Separation of Powers: A Forgotten Protection in the Context of Eminent Domain and the Natural Gas Act, 16 Regent U. L. Rev. 371, 405 (2004) ("In deciding eminent domain cases under the [NGA], district courts across the country have taken unbelievable action. They have interpreted the Act and found that neither the Act nor any other federal law gives private gas companies the quick-take power of eminent domain. They have also acknowledged that Congress has withheld such power and that private gas companies have no legal right or entitlement to quick-take power. Amazingly, these same courts then invoke their`inherent equitable powers' to grant private gas companies the quick-take power that Congress specifically chose to withhold.")
[26] 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal citations omitted).
[27] Chambers, 501 U.S. at 43-46, 111 S.Ct. 2123.
[28] Berdie v. Kurtz, 88 F.2d 158, 159 (9th Cir. 1937)