**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 17-3075, 17-3076, 17-3115 & 17-3116

———————

TRANSCONTINENTAL GAS PIPE LINE COMPANY,
LLC

v.

PERMANENT EASEMENTS FOR 2.14 ACRES
AND TEMPORARY EASEMENTS
FOR 3.59 ACRES IN CONESTOGA TOWNSHIP,
LANCASTER COUNTY, PENNSYLVANIA, TAX
PARCEL NUMBER 1201606900000; HILLTOP HOLLOW
LIMITED PARTNERSHIP; HILLTOP HOLLOW
PARTNERSHIP LLC GENERAL PARTNER OF HILLTOP
HOLLOW LIMITED PARTNERSHIP; LANCASTER
FARMLAND TRUST; ALL UNKNOWN OWNERS

Hilltop Hollow Limited Partnership and
Hilltop Hollow Partnership, LLC,

Appellants in 17-3075

———————

TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC

v.

PERMANENT EASEMENT FOR 2.02 ACRES AND
TEMPORARY EASEMENTS FOR 2.76 ACRES IN
MANOR TOWNSHIP, LANCASTER COUNTY
PENNSYLVANIA, TAX PARCEL NUMBER
4100300500000, 3049 SAFE HARBOR ROAD,
MANOR  TOWNSHIP, LANCASTER, PA; STEPHEN D.
HOFFMAN; AND ALL UNKNOWN OWNERS

Stephen D. Hoffman,

Appellant in 17-3076

———————————

TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC

v.

PERMANENT EASEMENT FOR 1.33 ACRES AND
TEMPORARY EASEMENTS FOR 2.28 ACRES
CONESTOGA TOWNSHIP, LANCASTER
COUNTY,  PENNSYLVANIA TAX PARCEL NUMBER
1202476100000, 4160 MAIN STREET CONESTOGA, PA
17516; LYNDA LIKE, also known as Linda Like,
AND ALL UNKNOWN DEFENDANTS

Lynda Like,

Appellant in 17-3115

———————————

TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC

v.

PERMANENT EASEMENT FOR 0.94 ACRES AND
TEMPORARY EASEMENTS FOR 1.61 ACRES IN
CONESTOGA TOWNSHIP, LANCASTER COUNTY,
PENNSYLVANIA, TAX PARCEL NUMBER
1203589400000, SICKMAN MILL ROAD; BLAIR B.
MOHN; MEGAN E. MOHN, AND ALL UNKNOWN
OWNERS

Blair B. Mohn and Megan E. Mohn,

Appellants in 17-3116

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Civil Actions Nos. 17-cv-00715, 17-cv-00723,
17-cv-00720, 17-cv-00722)
District Judge: Honorable Jeffery L. Schmehl

_____

Submitted under Third Circuit LAR 34.1(a)
on October 2, 2018

Before: SHWARTZ, ROTH and FISHER, Circuit Judges

(Opinion filed: October 30, 2018)

Siobhan K. Cole
White & Williams
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103

Jeremy P. Hopkins
Cranfill Summer & Hartzog
5420 Wade Park Boulevard
Suite 300
Raleigh, NC 27607

Michael N. Onufrak
White & Williams
1650 Market Street
Suite 1800
Philadelphia, PA 19103

Carolyn Elefant
Law Offices of Carolyn Elefant
8th Floor
1440 G Street N.W.
Washington, DC 20005

Mark L. Freed
Curtin & Heefner
2005 South Easton Road
Suite 100
Doylestown, PA 18901


*Counsel for Appellants*

Patrick F. Nugent
Sean T. O'Neill
Saul Ewing Arnstein & Lehr
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102

Elizabeth U. Witmer
Saul Ewing Arnstein & Lehr
1200 Liberty Ridge Drive
Suite 200
Wayne, PA 19087

     *Counsel for Appellees*

---

## OPINION

---

ROTH, <u>Circuit Judge</u>

Congress may grant eminent domain power to private companies acting in the public interest. This appeal requires us to determine the limits on Congress's grant of eminent domain power to private companies building gas lines under the Natural Gas Act (NGA), 15 U.S.C. § 717f(h).

The NGA gives natural gas companies the power to acquire property by eminent domain, but it provides only for standard eminent domain power, not the type of eminent

5

domain called "quick take" that permits immediate possession.[1] The District Court granted a preliminary injunction to Transcontinental Gas Pipe Line Company, which effectively gave the company immediate possession of certain rights of way owned by appellant landowners. The landowners claim that granting immediate possession violated the constitutional principle of separation of powers because the taking of property by eminent domain is a legislative power and the NGA did not grant "quick take." We disagree and hold that the District Court's order did not violate the principle of separation of powers because Transcontinental properly sought and obtained the substantive right to the property before seeking equitable relief. We will therefore affirm.

## I

Transcontinental is building a natural gas pipeline that runs through Pennsylvania, Maryland, Virginia, North Carolina, and South Carolina. For this project, named "Atlantic Sunrise Expansion Project," Transcontinental needed certain rights of way, including those owned by appellants Hilltop Hollow Limited Partnership, Stephen Hoffman, Lynda Like, and Blair and Megan Mohn (collectively "Landowners"). Under § 717f(h) of the NGA, gas companies may acquire property by eminent domain if they meet three requirements. A gas company must demonstrate, first, that it holds a certificate of public convenience and necessity from the Federal Energy Regulatory Commission (FERC); second, that it was unable to acquire the right of way through negotiation with the

[1] For a further description of "quick take" *see* Section III.A *infra.*

6

landowner; and third, that the amount claimed by the owner of the property exceeds $3,000. If these conditions are met, the gas company may "acquire the [necessary right-of-way] by the exercise of the right of eminent domain in the district court."[2]

Transcontinental has met all three requirements of § 717f(h). The administrative review leading up to the certificate of public convenience and necessity lasted almost three years and, as is evident from the record, included extensive outreach and many avenues of public participation. The process started when FERC granted the company's request to use the pre-filing process on April 4, 2014.[3] On July 29, 2014, FERC issued a Notice of Intent to Prepare an Environmental Impact Statement (EIS) for the Planned Atlantic Sunrise Expansion Project, Request for Comments on Environmental Issues, and Notice of Public Scoping Meetings (NOI).[4] The NOI was then mailed to 2500 interested parties. It invited comment on the project's environmental issues from all levels of government, interest groups, Native American tribes, affected property owners, local media and libraries, and other interested parties. The Commission heard from 93 speakers and received over 600 written comments.[5] On March 31, 2015, the company filed its application to construct and operate the Atlantic Sunrise project.[6] FERC mailed letters to potentially affected landowners (as well as to government officials and other

---

[2] § 717f(h).
[3] A1424.
[4] A1424; 79 Fed. Reg. 44,023 (2014).
[5] A1424.
[6] A1425.

stakeholders) on October 22, 2015.[7]  FERC issued the draft EIS on May 5, 2016, and published it on May 12, 2016.[8]  At four public meetings in June 2016, FERC heard from 203 speakers and received over 560 written comments and 900 identical letters on the draft EIS.[9]  Two alternative pipeline routes were identified following the draft EIS, and additional notices were mailed to potentially affected stakeholders, in response to which FERC received 25 additional comment letters.[10]  FERC issued the final EIS on December 30, 2016, and published it on January 9, 2017.[11]

The Commission issued a certificate of public convenience and necessity to Transcontinental—the first requirement of § 717f(h) of the NGA—on February 3, 2017.[12]  It found "[b]ased on the benefits" of the pipeline, "the minimal adverse effects on landowners or surrounding communities," and "the absence of adverse effects on existing customers and other pipelines and their captive customers, . . . that the public convenience and necessity require[d] approval" of the project "subject to the conditions" set out in the Order Issuing Certificate.[13]  Those conditions included requirements that Transcontinental, *inter alia*, construct the pipeline and make it available for service within three years of the date of the order,[14] comply with certain environmental

---

[7] A1425.

[8] 81 Fed. Reg. 29,557 (2016).

[9] A1425.

[10] A1426.

[11] A1426; 82 Fed. Reg. 2,344 (2017).

[12] A1396.

[13] A1410.

[14] *See* 18 C.F.R. § 157.20(b), A1466.

conditions, and follow certain rate schedules.[15] FERC also required that Transcontinental execute firm contracts for volumes and service terms "equivalent to those in its precedent agreements" before construction.[16] The Order Issuing Certificate contained information on those binding precedent agreements, comprising 100% of the capacity generated by the project, with nine shippers.[17] The Landowners sought rehearing and included a request to stay the Order Issuing Certificate and construction of the project,[18]

---

[15] A1466-67.

[16] A1467.

[17] A1400-01, A1407-10. FERC noted that while "a number of the project shippers are producers," its "policy does not require that shippers be end-use consumers of natural gas. . . . [A] project driven primarily by marketers and producers does not render it speculative. Marketers or producers who subscribe to firm capacity on a proposed project on a long-term basis presumably have made a positive assessment of the potential for selling gas to end-use consumers in a given market and have made a business decision to subscribe to the capacity on the basis of that assessment." A1408.

[18] Request for Rehearing and Motion for Stay of Certain Landowners (Mar. 6, 2017), Accession No. 20170306-5123; Petition for Rehearing of Lynda Like of Order Issuing Certificate for the Atlantic Sunrise Project and Request for Stay of Certificate (Mar. 6, 2017), Accession No. 20170306-5204; Petition for Rehearing of Follin Smith and Blair and Megan Mohn of Order Issuing Certificate for the Atlantic Sunrise Project and Request for Stay of Certificate (Mar. 6, 2017), Accession No. 20170306-5202.

but FERC tolled the rehearing request on March 13, 2017,[19] denied the stay requests on August 31, 2017,[20] and finally denied the rehearing request on December 6, 2017.[21]

The second and third requirements for using the eminent domain powers under § 717f(h) of the NGA are that the gas company negotiate with the landowner for the necessary right of way and that value of the right of way exceeds $3000. Transcontinental extended written offers of compensation exceeding $3000 to each of the Landowners, but these offers were not accepted.[22] Transcontinental thus satisfied the second and third requirements. The company filed condemnation complaints pursuant to Rule 71.1 in four

---

[19] The tolling order noted that if FERC had not responded to the rehearing requests within 30 days, the requests would be considered denied under 18 C.F.R. § 385.713 (2016); therefore, FERC tolled the request "[i]n order to afford additional time for consideration of the matters." A669.

[20] Order Denying Stay, *Transcontinental Gas Pipe Line Co., LLC*, 160 FERC ¶ 61,042 (Aug. 31, 2017), Accession No. 20170831-3088.

[21] Order on Rehearing, *Transcontinental Gas Pipe Line Co., LLC*, 161 FERC ¶ 61,250 (Dec. 6, 2017), Accession No. 20171206-3073.

[22] Transcontinental submitted a declaration in its summary judgment briefing from Aaron Blair, a "Senior Land Representative" for Transcontinental's parent company, Williams Partners, L.P., establishing that it had made these offers, and there was also testimony to that effect at the preliminary injunction hearing. A609 (Blair Declaration); A1049 (Blair testimony).

separate actions against the Landowners on February 15, 2017.[23]

Having met the three requirements of § 717f(h), Transcontinental moved for partial summary judgment on February 20, 2017, in the Hilltop, Hoffman, and Mohn condemnation actions and on February 22, 2017, in the Like condemnation action.[24] Transcontinental also requested an injunction giving immediate access for the purpose of conducting a survey in the Hilltop and Hoffman actions and claimed immediate entitlement based on the existence of the FERC order.[25] On April 6, 2017, the District Court denied the motion for an injunction under the NGA because it had not yet determined the merits of Transcontinental's condemnation action, though it granted Transcontinental limited survey access pursuant to Pennsylvania state law.[26] The court held that it would have been premature to grant such an injunction at that time given that the Landowners in related cases had not yet finished briefing the summary judgment motions.[27] The court noted that if Transcontinental later established its right to condemn, the court would be able to use its equitable power to award preliminary injunctive relief.[28]

After briefing on the summary judgment motions concluded, Transcontinental filed an omnibus motion for

---

[23] A130, A1537, A1709, A1832.
[24] A130, A1538, A1833, A1709.
[25] A679.
[26] A679, A680.
[27] A680.
[28] A679.

11

preliminary injunction on June 28, 2017.[29]  The Landowners responded on July 14, 2017.[30]  On June 30, 2017, the District Court scheduled oral argument on the motions for July 17 and 20, 2017.  At oral argument, a witness for Transcontinental testified that construction was planned to begin in the fall of 2017 and that it would need access to the rights of way by August 18,[31] or else it would suffer various harms.[32]  The Landowners cross-examined Transcontinental's witness,[33] and all four Landowners testified.[34]  The Landowners' testimony included statements that they had all participated in the FERC administrative process.[35]  Counsel for Landowners presented argument that the taking constituted a "quick take" and that it violated separation of powers principles.[36]

On August 23, 2017, the District Court granted Transcontinental's motions for partial summary judgment and omnibus motion for a preliminary injunction.[37]  The court found no dispute that Transcontinental met the three requirements for seeking eminent domain under the NGA and held that the company was therefore entitled to the entry of

---

[29] A685.

[30] A135, A1541, A1712, A1835.

[31] A953-54, A957.

[32] A957-961.

[33] A963.

[34] A1068, A1110, A1152, A1184.

[35] A1108 (Hilltop), A1124-25 (Hoffman), A1158-59 (Mohn), A1191 (Like).

[36] A1202-10, A1214-16.

[37] A35; A20-28, A75-82, A97-103, A114-21; A18-19, A73-74, A95-96, A112-13.

partial summary judgment.[38] The court addressed the Hilltop/Hoffman Landowners' due process claims and ruled that they were essentially attacks on the FERC certificate, and were therefore outside the court's jurisdiction.[39] The court added that, even if it were to exercise jurisdiction, it would find that the Hilltop/Hoffman Landowners had received "adequate due process" because they had participated in oral argument, had filed a request for rehearing with FERC, and had filed an appeal in the D.C. Circuit Court of Appeals.[40] The Hilltop/Hoffman Landowners had also argued that FERC's tolling order deprived them of due process because it indefinitely extended FERC's time limit to rule on their Motion for Rehearing and Stay. The court rejected this argument on the grounds that mere delay in the adjudication of a claim does not amount to a deprivation.[41] The court then addressed the Like/Mohn Landowners' claim that because the FERC certificate was conditioned on certain requirements, some of which had not yet been met, the certificate could not be used to exercise eminent domain. As the NGA does not require FERC certificate holders to satisfy all the certificate's conditions before exercising eminent domain, and because the certificate itself contained no such requirement, the District Court rejected this argument.[42]

On the basis of this review, the court held that Transcontinental had met the four factor test for a preliminary injunction. Under that test, the movant must demonstrate: 1)

---

[38] A41-42.

[39] A42.

[40] A44.

[41] A46-47.

[42] A48-49.

13

that there is reasonable probability of success on the merits, 2) that there will be irreparable harm to the movant in the absence of relief, 3) that granting the injunction will not result in greater harm to the nonmoving party, and 4) that the public interest favors granting the injunction.[43]  The first two factors are the "most critical."[44]  On the first prong, it found that "Transco[ntinental] ha[d] already succeeded on the merits."[45]  The court quoted our decision in *Columbia Gas Transmission, LLC v. 1.01 Acres*.  In that case, we affirmed the grant of partial summary judgment in an action for condemnation and the grant of a preliminary injunction, noting that there was "no remaining merits issue" because the District Court had already ruled that the gas company had the right to the easements by eminent domain.[46]

On the second prong, the District Court found that Transcontinental would suffer irreparable harm in the form of construction delays, inability to complete surveys required to satisfy environmental conditions, risk of non-compliance with shipper contracts, and monetary harm.[47]

---

[43] *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017).

[44] *Id.* at 179.  If the first two "gateway" factors are met, the court "then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

[45] A51.

[46] 768 F.3d 300, 315 (3d Cir. 2014).

[47] A53-54.  The project is at an advanced stage.  FERC has issued a series of Notices to Proceed on the construction of

14

On the third prong, the District Court noted again that Transcontinental already had the substantive right to possession and the only question was "the timing of the possession."[48] If the permits to build certain pipeline sections on the Landowners' property were eventually denied, the Landowners would have legal recourse to recover their property.[49]

Finally, on the public interest prong, the District Court noted the project's potential to provide the general public "throughout a vast area of the country" with access to natural gas, and found that "the mere fact that [certain subscribers] will have access to export facilities does not mean that they will in fact export the natural gas out of the country."[50] The District Court noted also that FERC had found the project to be in the public interest, which further tipped this factor in favor of Transcontinental.[51]

The Landowners appealed.

---

the project, and Transcontinental states in its brief that only 23% of the construction remains to be completed.

[48] A54.

[49] A55.

[50] The Hilltop/Hoffman Landowners point out that the project is designed to generate 1,700,002 dekatherms per day, and they argue that of this amount, 850,000 dekatherms, which is just barely under 50%, will go to one shipper, Cabot Oil & Gas, which plans to export this entire amount.

[51] A56-57.

## II

As the grant of partial summary judgment did not end the litigation as to all claims and all parties, only the grant of the preliminary injunction is before us.[52] We have jurisdiction over the appeal of the injunction under 28 U.S.C. § 1292(a). The Landowners, however, do not bring a standard appeal of a preliminary injunction, reviewable for abuse of discretion. The Landowners contest only the constitutionality of the lower court's procedure, not the application of the four-factor preliminary injunction test.[53] Therefore, we review their claims *de novo*.[54]

## III

The Landowners ask us to hold that the procedure followed by the District Court—grant of partial summary judgment, awarding possession of the rights-of-way, followed by equitable relief in the form of preliminary injunction—is unconstitutional. The Landowners argue that such a procedure is an unconstitutional grant of "quick take" eminent domain power, the type of eminent domain that allows for immediate possession. Congress granted "quick take" eminent domain power to government actors in the Declaration of Taking Act (DTA),[55] but the NGA neither contains nor incorporates such a provision. The Landowners argue that since Congress did not grant natural gas companies

---

[52] *Andrews v. United States*, 373 U.S. 334, 340 (1963).

[53] A56.

[54] *Free Speech Coalition, Inc. v. Attorney General*, 825 F.3d 149, 159 (3d Cir. 2016).

[55] 40 U.S.C. § 3114.

16

"quick-take" eminent domain power in the NGA, the court cannot, in effect, grant such powers on its own; doing so usurps the legislature's authority. The question before us then is whether Congress, in passing the NGA, intended to remove the judiciary's access to equitable remedies to enforce an established substantive right. Put another way, did Congress intend to forbid immediate access to the necessary rights of way when it granted only standard condemnation powers to natural gas companies?

## A

We begin with the Landowners' premise: that the District Court effected a "quick-take." As an initial matter, eminent domain is a legislative power, but Congress can delegate it to other governmental actors[56] or to private actors "execut[ing] works in which the public is interested."[57]

---

[56] *E.g.*, 33 U.S.C. § 594 (providing the Secretary of the Army the authority to acquire land, through eminent domain proceedings, "needed for a work of river and harbor improvements duly authorized by Congress").

[57] *Mississippi & Rum River Boom Co. v. Patterson*, 98 U.S. 403, 406 (1878); *see also First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.*, 482 U.S. 304, 321 (1987) ("[T]he decision to exercise the power of eminent domain is a legislative function."); *Monongahela Nav. Co. v. United States*, 148 U.S. 312, 321 (1893). The Landowners acknowledge the existence of judicial takings, citing *Stop the Beach Renourishment, Inc. v. Florida Dep't Enviro. Protection*, 560 U.S. 702, 713-14 (2010)), but maintain that only Congress can grant eminent domain powers. *See Secombe v. Milwaukee & St. P.R. Co.*, 90 U.S.

17

Congress generally does this by delegating the power of eminent domain. There are two primary types of eminent domain at the government's disposal. One is "quick take," permitted by the DTA, 40 U.S.C. § 3114, in which the government files a "declaration of taking" that states the authority for the taking, the public use, and an estimate of compensation. Upon depositing the estimated compensation, title vests automatically with the United States. The other is standard condemnation, permitted by 40 U.S.C. § 3113, in which title passes and the right to possession vests after a final judgment and determination of just compensation. The procedures for standard condemnations are set forth in Fed. R. Civ. P. 71.1. The NGA is an example of a grant of eminent domain power from Congress to a private actor to condemn land for public use, but it only embodies the second type—standard condemnation power, not "quick take."[58]

In the case before us, Transcontinental followed standard condemnation procedure. The company filed condemnation complaints under Rule 71.1, not a declaration of taking. Rule 71.1 has requirements that go beyond the DTA.[59] Transcontinental followed these procedures by filing

108, 117-18 (1874) ("[T]he mode of exercising the right of eminent domain, in the absence of any provision in the organic law prescribing a contrary course, is within the discretion of the legislature.").

[58] *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 820-21 (4th Cir. 2004) (citing *Mississippi & Rum River Boom Co. v. Patterson*, 98 U.S. at 406).

[59] *E.g.*, a condemnation complaint that explains the authority for the taking, the uses for the property, a description sufficient to identify the property, the interests to be acquired,

condemnation complaints under Rule 71.1; it then established its substantive right to the property by filing for summary judgment. Only after the District Court granted summary judgment in Transcontinental's favor did it grant injunctive relief. Transcontinental also posted bond at three times the appraised value of the rights of way, as required by the orders of condemnation.[60] If Transcontinental had in fact exercised

and each owner; notice and personal or publication service; and procedures for the determination and payment of just compensation.

[60] *See* A22, A99, A116, A77. We note that the Landowners have not received any of this money. Rule 71.1(c)(4) allows the court to "order any distribution of a deposit that the facts warrant." At least one court has interpreted this provision to apply only after the final determination of just compensation. *UGI Sunbury LLC v. A Permanent Easement for 71.7575 Acres*, 16-cv-788, 2016 WL 7239945, at \*2 n.14 (M.D. Pa. Dec. 15, 2016). In *UGI Sunbury*, the court interpreted an Advisory Committee note on this section, which states that the sentence "enables the court to expedite the distribution of a deposit, in whole or in part, as soon as pertinent facts of ownership, value and the like are established," to mean that distribution can *only* occur after just compensation is determined. Such a reading conflicts with subsection (j)(2), which provides that "[i]f the compensation finally awarded to a defendant exceeds the amount distributed to that defendant," the court must recoup the deficiency from the plaintiff, and the reverse is true if the final amount awarded is less than the amount distributed. Such a scheme would be unnecessary if deposits never occurred before final determination of just compensation. In sum, while it does not seem to be common practice to distribute compensation upon

19

"quick take," it would have simply filed a declaration of taking with an estimate of compensation; title would have vested automatically. Here, unlike in a "quick take" action, Transcontinental does not yet have title but will receive it once final compensation is determined and paid.[61] Unlike in a "quick take" action, the Landowners had the opportunity to brief the summary judgment motions and participate in the preliminary injunction hearing. The different procedures and opportunities for participation distinguish the grant of the injunction here from an exercise of "quick take" power.

**B**

The Landowners contend, nevertheless, that even if the procedure below was not *technically* an exercise of "quick take" eminent domain, the use of a preliminary injunction *amounted to* a "quick take." However, the technical distinctions they seek to elide are, in the end, meaningful distinctions in the law. According to the Landowners, there is a difference between the substantive right to access that arises under the NGA, and the substantive right to *immediate* access, which only Congress can authorize. The Like/Mohn Landowners argue that granting injunctive relief for immediate possession is in itself a substantive right of eminent domain that a court cannot confer in the absence of Congressional authorization. There is, however, no case law to support the proposition that an injunctive right of immediate possession is a substantive right, conferrable only by Congress. The fact that "quick take" power exists does

---

posting of the bonds, in cases presenting hardship to landowners, the court's hands may not be tied.

[61] *Danforth v. United States*, 308 U.S. 271, 284-85 (1939).

not prohibit other kinds of immediate access. The only substantive right at issue is the right to condemn using eminent domain, conferred by Congress in the NGA. The District Court found that Transcontinental had obtained that right.[62] The preliminary injunction merely hastened the enforcement of the substantive right—it did not create any new rights.[63]

The Like/Mohn Landowners portray Transcontinental as a customer who pays for 90% of an item and then takes it home, but Transcontinental did not have 90% of a right to the rights of way—it had the whole right. The Hilltop/Hoffman Landowners argue that the fact that title to the property had not yet been transferred is immaterial; it is the grant of the preliminary injunction that is the essence of the "quick take" power. To the contrary, we conclude that the equitable means by which Transcontinental's possession vested through the preliminary injunction differed in significant ways from "quick take" under the DTA. We decline the invitation to conflate the two processes. These are not trivial differences of procedure or paperwork.

---

[62] *See Seymour v. Freer*, 75 U.S. 202, 213-14 (1868) (property rights "distinct from the legal ownership . . . constitute an equity which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked").

[63] *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945) (issuing preliminary injunction "appropriate to grant intermediate relief of the same character as that which may be granted finally").

The cases relied on by the Landowners are easily distinguishable as they involve gas companies that failed to obtain the crucial substantive right to condemn before seeking a preliminary injunction. In one, *Transwestern Pipeline Co. v. 17.19 Acres of Property Located in Maricopa County*,[64] the Ninth Circuit held that a preliminary injunction was not appropriate because the company did not obtain an order of condemnation. While the gas company argued that it was guaranteed success on the merits due to its FERC certificate and the fact that it met the § 717f(h) factors, at the time it sought equitable relief it had no right to condemn.[65] The Ninth Circuit explicitly endorsed the procedure of first obtaining an order of condemnation (as Transcontinental did here through partial summary judgment) followed by a request for preliminary injunction.[66]

The Seventh Circuit's *Northern Border* decision is similar.[67] There, the gas company moved for immediate possession before the district court issued a decision on the merits of its eminent domain proceeding. Since the company had only the FERC certificate, the court denied its request: "A preliminary injunction may issue only when the moving party has a substantive entitlement to the relief sought. . . . [The company has] an entitlement that will arise at the conclusion of the normal eminent domain process" but not the right of immediate access.[68] The Landowners place much

---

[64] 550 F.3d 770 (9th Cir. 2008).

[65] *Id.* at 773, 777.

[66] *Id.* at 777.

[67] *Northern Border Pipeline Co. v. 86.72 Acres of Land*, 144 F.3d 469 (7th Cir. 1998).

[68] 144 F.3d at 471.

emphasis on the recognition in *Northern Border* that the NGA does not incorporate "quick take" authority under state law or under the DTA and on the statement in *Northern Border* that the NGA "does not create an entitlement to immediate possession of the land."[69] Both those statements are true: the NGA does not incorporate "quick take" authority and does not on its own create an entitlement to immediate possession. But *Northern Border* is clearly distinguishable because of the gas company's failure to "obtain an order determining that it had the right to condemn before it sought a preliminary injunction .... Without having that right in substantive law determined, the company could not invoke equity."[70]

The Landowners also suggest that due process, the Fifth Amendment, or some combination of the two require payment of just compensation before a condemnor can take possession. Such an argument directly contradicts established law that "due process does not require the condemnation of land to be in advance of its occupation by the condemning authority, provided only that the owner have opportunity, in the course of the condemnation proceedings, to be heard and to offer evidence as to the value of the land taken."[71] In

---

[69] *Id.* at 471, 472 (citation omitted).

[70] *Sage*, 361 F.3d at 827-28.

[71] *Bailey v. Anderson*, 326 U.S. 203, 205 (1945); *see also Presley v. City of Charlottesville*, 464 F.3d 480, 489-90 (4th Cir. 2006) ("[W]hen the alleged deprivation is effectively a physical taking, procedural due process is satisfied so long as private property owners may pursue meaningful postdeprivation procedures to recover just compensation."); *Collier v. City of Springsdale*, 733 F.2d 1311, 1314 (8th Cir. 1984).

23

addition, compensation need not be paid contemporaneously with the taking; instead, the Fifth Amendment requires only that a provision for payment must be available.[72] Thus the Landowners' reliance on *Kirby Forest Industries v. United States*,[73] *Cherokee Nation v. Southern Kansas Railway Co.*,[74] and *Atlantic Seaboard Corp. v. Van Sterkenburg*[75] is

---

[72] *See Preseault v. I.C.C.*, 494 U.S. 1, 11 (1990).

[73] 467 U.S. 1 (1984). *Kirby* explained how Rule 71.1 operates in standard condemnation proceedings, where the "practical effect of final judgment on the issue of just compensation is to give the Government an option to buy the property at the adjudicated price." *Id.* at 4. The central question in *Kirby* was how to determine the date on which a taking should be deemed to occur, a question that affected the amount of interest due on a condemnation proceeding award.

[74] 135 U.S. 641 (1890). The act at issue in *Cherokee* provided for full compensation "before the railway shall be constructed," though the Court also stated that the Constitution "does not provide or require that compensation shall be actually paid in advance of the occupancy of the land to be taken; but the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed." *Id.* at 659. The Court noted that it could sometimes be difficult to judge whether a particular provision was "sufficient to secure the compensation" to which a landowner is entitled under the Constitution, but that it had no trouble finding the statute at issue constitutional. *Id.*

[75] 318 F.2d 455 (4th Cir. 1963). The gas company in this case followed the condemnation procedures of Rule 71.1, and after the determination of just compensation, announced that it wished to proceed immediately with the construction of the pipeline. *Id.* at 459-60. It is not clear why the gas company

misplaced. None of these cases lend support to the Landowners' argument that Transcontinental's right to possession of the properties will not vest until Transcontinental has exercised its option to buy the properties at the adjudicated price.

The Landowners go on to contend that because the NGA does not grant "quick take" power, the statute does not permit immediate possession.[76] They make this argument

chose to wait until after the just compensation phase to seek possession. In any event, the court upheld an order permitting the company to pay the award and begin using the easement because "[i]nherently . . . the condemnation court possesses the power to authorize *immediate entry* by the condemnor upon the condemned premises . . .. There is no valid reason why an owner . . . should be allowed, by a fruitless and meritless appeal, to postpone indefinitely the condemnor's enjoyment of the premises, imposing upon the condemnor great, perhaps irreparable, damage, all without risk of further loss or injury to the owner." *Id.* at 460 (emphasis added). The case is distinguishable because the gas company completed condemnation procedures before seeking possession, but even so, *Atlantic Seaboard*'s recognition of an "inherent[]" power to authorize "immediate entry" more squarely helps Transcontinental.

[76] For example, the Hilltop/Hoffman Landowners cite to *Washington Metropolitan Area Transit Authority v. One Parcel of Land in Montgomery County*, 706 F.2d 1312 (4th Cir. 1983). In that case, the Fourth Circuit upheld a quick take because Congress explicitly made the DTA available to the transit authority. It did not do so in the NGA. The case does not address the use of injunctions to permit immediate

without any explanation for why a district court's authority to issue a preliminary injunction should disappear when a condemnation proceeding has been filed. Nothing in the NGA suggests either explicitly or implicitly that the rules governing preliminary injunctions should be suspended in condemnation proceedings.

Historically, the NGA, when first enacted, did countenance a wide variety of eminent domain procedures because it required district courts to conform "as nearly as may be" with the eminent domain procedure of the state in which the property was situated. The state procedures protected landowners to a varying degree.[77] Reliance on state eminent domain procedures ended with the adoption of Rule 71.1 (previously numbered 71A), which created a nationally uniform approach to eminent domain proceedings, and which, because it conflicted with § 717f(h), superseded the state-

---

possession, and we do not find the case to be persuasive evidence that the NGA prohibits such injunctions.

[77] In states with no specific pipe line condemnation statutes, courts made do with laws intended for private utilities in general. *E.g.*, *Williams v. Transcontinental Gas Pipe Line Corp.*, 89 F. Supp. 485, 487-88 (W.D.S.C. 1950) ("[A]ll that is needed to make the grant effective is a State court procedure which meets the requirements of due process and which can be reasonably utilized . . .. The [state] procedure . . . . meets these requirements. It furnishes due process. With its Clerks' juries, composed of the landowners' neighbors, to pass upon the compensation originally, and with the right of appeal therefrom to the Common Pleas Court with a de novo jury trial, the procedure affords every protection to the landowner." (citations omitted)).

conformity language in the NGA.[78]   Courts now generally agree that condemnation proceedings under the NGA should follow Rule 71.1.[79]

---

[78] *Northern Border Pipeline Co. v. 64.111 Acres of Land*, 344 F.3d 693, 694 (7th Cir. 2003) ("Congress may itself decide that procedural rules in statutes should be treated as fallbacks, to apply only when rules are silent.  And it has done just this. . . .  Thus Rule 71A(h) prevails:  its nationally uniform approach conflicts with the conformity-to-state-practice approach of § 717f(h), and under [the Rules Enabling Act's supersession clause] the statutory rule 'shall be of no further force or effect.'") (citing *Henderson v. United States*, 517 U.S. 654 (1996)); *see also United States v. 93.970 Acres of Land*, 360 U.S. 328, 333 n.7 (1959) (holding similar language in another statute "clearly repealed by Rule 71A").

[79] *Northern Border Pipeline Co.*, 344 F.3d at 694; *Sage*, 361 F.3d at 822; *Southern Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1375 (11th Cir. 1999) ("It is clear to us that Rule 71A was promulgated to override a number of confusing federal eminent domain practice and procedure provisions, such as that of 15 U.S.C. § 717f(h), and to provide a unified and coherent set of rules and procedures to be used in deciding federal eminent domain actions.").  *But see Delaware Riverkeeper Network v. FERC*, 895 F.3d 102, 110-11 (3d Cir. 2018) (noting that the NGA ensures the occurrence of "a hearing that itself affords due process" with respect to the taking because the statute provides that eminent domain actions conform with the practice and procedure of such actions in the courts of the state where the property is situated); *contra Township of Bordentown, NJ v. FERC*, Nos. 17-1047, 17-3207, 2018 WL 4212061, at *18 n.21 (3d Cir.

Moreover, we see no reason to read a repeal of Rule 65, governing preliminary injunctions, into the NGA. In fact, subsection (a) of Rule 71.1 incorporates the other Federal Rules of Civil Procedure—including the preliminary injunction rule, Rule 65—in condemnation proceedings to the extent Rule 71.1 does not govern. We do not so easily exterminate equitable remedies.

In so holding, we find the Fourth Circuit opinion in *East Tennessee Natural Gas Co. v. Sage*[80] persuasive. There, the landowners argued "that Congress does not intend for gas companies to gain immediate possession because it has not granted statutory quick-take power to gas companies as it has to government officers who condemn property in the name of the United States."[81] But the court held that this argument "overlooks the preliminary injunction remedy provided in the Federal Rules."[82] Rule 71.1 "provides . . . that the regular rules of procedure apply to any subject not covered by the special rule."[83] Thus, there was no reason why equitable relief "in the form of immediate possession" would be "barred in a condemnation case."[84] As the *Sage* court noted, the landowners, in their attempts to protect themselves from immediate possession, seemed to assume that the preliminary injunction process was somehow less protective of their interests than "quick take" procedures. The court held,

---

Sept. 5, 2018) (NGA "requires district courts to attempt to mirror the state courts' condemnation proceedings").

[80] 361 F.3d 808.
[81] *Id.* at 824.
[82] *Id.*
[83] *Id.*
[84] *Id.*

however, that when condemning land under the NGA, "a gas company that seeks immediate possession has a much stiffer burden than the government does under the DTA" because the gas company must first establish the substantive right to condemn and then prevail on the four factors considered in preliminary injunctions.[85]

Under either procedure, a "quick take" or condemnation under Rule 71.1, landowners are protected from the possibility of initial underpayment; with standard condemnation plus preliminary injunction, if the company does not pay the difference within a reasonable time, it will be liable for trespass.[86] The Landowners claim that *Sage* did not address the separation of powers arguments they bring here, but a panel of the Fourth Circuit recently followed *Sage* and persuasively demonstrated that the opinion did in fact consider separation of powers principles.[87] And this Court, too, albeit with less discussion, has ruled that where summary judgment is properly granted on a condemnation complaint, a preliminary injunction is appropriate as well. We effectively granted immediate access on the basis that the gas company

---

[85] *Id.* at 825-26.

[86] *Id.* at 825 (citing *Cherokee Nation*, 135 U.S. at 660).

[87] *Columbia Gas Transmission, LLC v. 76 Acres, More or Less*, 701 F. App'x 221, 231 n.7 (4th Cir. 2017) (rejecting landowners' argument that "*Sage* is distinguishable because it did not mention the words 'separation of powers'" in part because *Sage* explicitly rejected the assertion "that only Congress can grant the right of immediate possession").

had demonstrated success on the merits and strong arguments on the other prongs of the preliminary injunction test.[88]

As the preliminary injunction was permitted by the Rules, permitted by the NGA, and did not amount to a grant of "quick take" eminent domain power in either name or substance, the court did not usurp legislative power or otherwise overstep the boundaries of its judicial power. We therefore see no violation of the principle of separation of powers in the District Court's procedure.

The Hilltop/Hoffman Landowners argue separately that the District Court's procedure deprived them of any meaningful opportunity to challenge FERC's public use determination. This argument also fails.

First, and most importantly, the Hilltop/Hoffman Landowners do not dispute that they had the opportunity to

---

[88] *Columbia Gas v. 1.01 Acres*, 768 F.3d at 315-16. We note that district courts around the country have implemented the procedure, relying on the Circuit decisions like *Sage*. *See Transcontinental Gas Pipe Line Co., LLC v. Permanent Easement for 0.03 Acres*, 17-cv-565, 2017 WL 3485752, at *4 (M.D. Pa. Aug. 15, 2017) ("It is commonplace for district courts to order immediate possession after FERC has taken a lengthy period of time determining whether or not to issue a certificate of public convenience and necessity.") (collecting cases). *See also Alliance Pipeline L.P. v. 4.360 Acres of Land*, 746 F.3d 362 (8th Cir. 2014) (no abuse of discretion in granting pipeline's immediate use and possession following FERC certificate and grant of summary judgment and preliminary injunction).

raise their concerns with FERC and did in fact do so;[89] sought stays of the construction, which were denied;[90] and sought rehearing,[91] which was also denied on December 6, 2017.[92] Before the order denying rehearing, the Landowners appealed to the D.C. Circuit Court, where the case is pending.[93] The NGA explicitly provides that neither a request for rehearing before FERC nor judicial review can stay the effectiveness of a FERC certificate.[94]

---

[89] Hilltop/Hoffman Landowners submitted 9 comments to FERC. Like/Mohn Landowners submitted 47 comments.

[90] Order Denying Stay, *Transcontinental Gas Pipe Line Co., LLC*, 160 FERC ¶ 61,042 (Aug. 31, 2017), Accession No. 20170831-3088.

[91] Request for Rehearing and Motion for Stay of Certain Landowners (Mar. 6, 2017), Accession No. 20170306-5123; Petition for Rehearing of Lynda Like of Order Issuing Certificate for the Atlantic Sunrise Project and Request for Stay of Certificate (Mar. 6, 2017), Accession No. 20170306-5204; Petition for Rehearing of Follin Smith and Blair and Megan Mohn of Order Issuing Certificate for the Atlantic Sunrise Project and Request for Stay of Certificate (Mar. 6, 2017), Accession No. 20170306-5202.

[92] Order on Rehearing, *Transcontinental Gas Pipe Line Co., LLC*, 161 FERC ¶ 61,250 (Dec. 6, 2017), Accession No. 20171206-3073. The D.C. Circuit denied the landowners' request for a stay pending the appeal of the FERC Order. *Allegheny Def. Project v. Fed. Energy Regulatory Comm'n*, Nos. 17-1098, 17-1128, 17-1263, 18-1030, 2018 WL 1388557 (D.C. Cir. Feb. 16, 2018) (*per curiam*).

[93] Nos. 17-1128, 18-1030.

[94] 15 U.S.C. § 717r(c).

In sum, the Hilltop/Hoffman Landowners are attacking the underlying FERC order, but review of the underlying FERC order is only properly brought to FERC on rehearing and then to an appropriate circuit court, as the Hilltop/Hoffman Landowners are pursuing. We lack jurisdiction to hear collateral attacks on the FERC certificate, which contained a finding that the project was for public use.[95] Neither the District Court nor this Court in this case may entertain arguments such as those brought by the Hilltop/Hoffman Landowners that FERC unduly credited self-serving statements by Transcontinental and ignored the potential that the project might have been intended to provide companies with greater access to the higher priced overseas market.[96]

**V**

The Landowners do not appeal the preliminary injunction based on an abuse of discretion in the District Court's analysis and so have waived that argument on appeal. Even so construed, their petition lacks merit. Transcontinental clearly showed success on the merits and would have been harmed if the injunction were denied.

For the above reasons, we hold that the NGA's grant of standard condemnation powers to natural gas companies does not preclude federal courts from granting equitable relief in the form of a preliminary injunction when gas companies have obtained the substantive right to condemn and otherwise

---

[95] 15 U.S.C. § 717r(b) (appeal of the certificate allowed in the circuit where the gas company is located or in the D.C. Circuit).

[96] Hilltop/Hoffman Brief at 37, 38.

qualify for equitable relief.  Because the Landowners fail to recognize the District Court's equitable power to enter preliminary injunctions once substantive rights are determined, their appeals lack merit.  We therefore affirm the orders of the District Court, granting the motions for preliminary injunctions.