Concurring opinion filed by Circuit Judge Millett.
Per Curiam:
*943 In February 2017, the Federal Energy Regulatory Commission approved a natural gas pipeline expansion called the Atlantic Sunrise Project, which stretches from northern Pennsylvania, across the Carolinas, and into Alabama. Environmental Associations whose members live and work in the areas affected by the Project and individual Homeowners whose property was used for the Project seek review of the Commission's orders permitting the Transcontinental Gas Pipe Line Company to move forward with the pipeline expansion. Because the challenges to the Commission's decision cannot surmount the deferential standards of agency review and binding circuit precedent, we deny the petitions.
I
A
Under the Natural Gas Act, 15 U.S.C. § 717 et seq ., a company wishing to construct a natural gas pipeline must first obtain a certificate of "public convenience and necessity" from the Federal Energy Regulatory Commission. See id . § 717f(c); Myersville Citizens for a Rural Community, Inc. v. FERC , 783 F.3d 1301, 1307 (D.C. Cir. 2015). The Commission "shall * * * issue[ ]" the certificate if it finds that the proposed project "is or will be required by the present or future public convenience and necessity." 15 U.S.C. § 717f(e).
When a pipeline company files a certificate application, the Commission reviews it under criteria set forth in its Certificate Policy Statement, 88 FERC ¶ 61,227 (1999), clarified , 90 FERC ¶ 61,128, further clarified , 92 FERC ¶ 61,094 (2000). The Certificate Policy Statement directs the Commission to consider whether the project meets a market need and whether the public benefits of the project outweigh the harms. See Sierra Club v. FERC , 867 F.3d 1357, 1379 (D.C. Cir. 2017). If market need and public benefit are both established, the Commission will issue a certificate authorizing the pipeline's construction. Id . Once that certificate is granted, the Natural Gas Act empowers the private certificate holder to exercise eminent domain authority if it "cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to *944 construct, operate, and maintain a pipeline[.]" 15 U.S.C. § 717f(h).
A party wishing to challenge the Commission's issuance of a certificate of public convenience and necessity must file a petition for rehearing with the Commission. 15 U.S.C. § 717r(a). Until the Commission disposes of that rehearing petition, the agency action is not final for purposes of judicial review. See id. § 717r(a) - (b) ; Clifton Power Corp. v. FERC , 294 F.3d 108, 110-111 (D.C. Cir. 2002). The filing and disposition of such a rehearing petition is thus a mandatory prerequisite to obtaining judicial review of the Commission's action. See Delaware Riverkeeper Network v. FERC , 857 F.3d 388, 399 (D.C. Cir. 2017) ; Clifton Power Corp. , 294 F.3d at 110-111. Congress directed that petitions for rehearing may be "deemed to have been denied" if the Commission has not "act[ed] upon the application for rehearing within thirty days after it is filed[.]" 15 U.S.C. § 717r(a).
The National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. , "require[s] the Commission to consider and disclose the environmental effects of the actions it certifies." Delaware Riverkeeper Network , 857 F.3d at 394 (internal quotation marks omitted). The Commission may fulfill this requirement by compiling an Environmental Impact Statement, which must consider, among other things, the proposed project's "indirect" environmental effects. See 42 U.S.C. § 4332(C) ; 40 C.F.R. §§ 1508.8, 1508.25(c).
B
In March 2015, the Transcontinental Gas Pipe Line Company ("Transco") applied for a certificate of public convenience and necessity to build the Atlantic Sunrise Project. After notice and public comment, the Commission issued a final Environmental Impact Statement in December 2016. In that Statement, the Commission concluded that "neither construction nor operation of the Project would significantly contribute to [greenhouse-gas] cumulative effects or climate change." J.A. 323.
On February 3, 2017, the Commission granted Transco its requested certificate of public convenience and necessity. 158 FERC ¶ 61,125 (2017) ("Certificate Order"). Environmental Associations and the private Homeowners whose land would become subject to an easement for the Project both filed petitions for rehearing with the Commission, along with motions for a stay of construction pending disposition of their petitions. Before Congress's 30-day deadline for action on the rehearing petitions expired, the Commission "granted" rehearing, but only "for the limited purpose of further consideration." J.A. 600 ("Certificate Tolling Order"). The Commission took no action on the stay motions for more than five months, and then denied them.
In late August, a Pennsylvania federal district court presiding over Transco's eminent domain action entered an order that declared Transco's "right to immediate possession of the properties in question," based on the presumed validity of FERC's Certificate Order. Transcontinental Gas Pipe Line Co. v. Permanent Easement for 2.14 Acres & Temp. Easements for 3.59 Acres in Conestoga Township, Lancaster County, Pa., Tax Parcel No. 1201606900000 , 2017 WL 3624250, at *1, *3 (E.D. Pa. Aug. 23, 2017) (rejecting the Homeowners' objections as "attacks on the FERC order itself," which "can only be challenged in front of FERC, and then in the United States Court of Appeals for the District of Columbia Circuit"), aff'd , 907 F.3d 725 (3d Cir. 2018).
On September 15, 2017, while the Environmental Associations' and Homeowners'
*945 petitions for rehearing were still pending, the Commission issued an order authorizing Transco to begin construction of the Project. J.A. 616 ("Construction Order"). Transco broke ground that same day.
The Environmental Associations promptly moved for rehearing of the Construction Order and an order halting construction. As its 30-day statutory deadline for action on the Construction Order rehearing petition approached, the Commission again issued an order granting rehearing "for the limited purpose of further consideration." J.A. 815 ("Construction Tolling Order").
The Commission eventually denied the Homeowners' and Environmental Associations' petitions for rehearing in December 2017, more than nine months after rehearing was sought and three months after construction began. 161 FERC ¶ 61,250 (2017) ("Certificate Rehearing Order"). Three months after that-and nearly six months after construction commenced-the Commission denied rehearing of the Construction Order. 162 FERC ¶ 61,192 (2018) ("Construction Rehearing Order").
II
This consolidated case arises out of four petitions for review collectively challenging the Certificate Order, the Certificate Tolling Order, the Construction Order, the Construction Tolling Order, and the Certificate Rehearing Order. Because the Homeowners and Environmental Associations both properly sought rehearing of the Certificate Rehearing Order, which encompasses all of their claims for our review and is the final agency decision greenlighting the Project, this court has jurisdiction. See 15 U.S.C. § 717r.[1]
The Commission's factual findings are conclusive so long as they are supported by substantial evidence. See 15 U.S.C. § 717(b). Where the Commission "has examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made," we must uphold its decision. FERC v. Electric Power Supply Ass'n , --- U.S. ----, 136 S. Ct. 760, 782, 193 L.Ed.2d 661 (2016) (formatting altered).
The Homeowners and Environmental Associations argue that the Commission's Certificate Order suffers from fatal substantive and procedural flaws. Specifically, they argue that the Commission improperly conducted its environmental assessment under NEPA, failed to substantiate market need for the Project as required by the Natural Gas Act, and denied them due process by authorizing construction to commence before the issuance of the Certificate Order could be judicially reviewed. None of those arguments succeed.
A
The administrative record forecloses the Homeowners' and Environmental Associations' three NEPA arguments.
First , the Homeowners and Environmental Associations argue that the Commission did not factor downstream greenhouse-gas emissions into its evaluation of the Project's environmental impacts.
The Homeowners and Environmental Associations are correct that customers' burning of the natural gas that the Project transports will produce greenhouse-gas emissions. See Sierra Club , 867 F.3d at 1374. They are also correct that NEPA required the Commission to consider both the direct and indirect environmental effects *946 of the Project, and that, despite what the Commission argues, the downstream greenhouse-gas emissions are just such an indirect effect. See id. ; 40 C.F.R. § 1502.16(b).
But that is as far as the argument gets them, because the Commission already took the steps the Homeowners and Environmental Associations request. The Commission addressed downstream emissions in the Environmental Impact Statement, the Certificate Order, and the Certificate Rehearing Order. In particular, the Commission estimated the amount of CO2 emissions resulting from the gas that the Project would transport and predicted that those emissions would be partially offset by reductions in higher carbon-emitting fuel that the Project's natural gas would replace. Neither the Homeowners nor the Environmental Associations have identified what more the Commission should have said. That failure is fatal. Unsubstantiated objections are not enough to stop an agency's action.
Second , the Homeowners and Environmental Associations assert that the Commission impermissibly segmented its environmental review by failing to consider the synergistic effect of the Project on emissions associated with a different pipeline-the Southeast Market Pipeline. Improper segmentation occurs when FERC creates separate Environmental Impact Statements for interconnected pipelines that should have been evaluated as a single project. See City of Boston Delegation v. FERC , 897 F.3d 241, 251-252 (D.C. Cir. 2018).
But NEPA requires more to make out an improper segmentation claim than the Homeowners and Environmental Associations have offered. Specifically, the Commission has no duty to consider the environmental effects of a separate project if the project in question has "substantial independent utility." City of Boston Delegation , 897 F.3d at 252 (internal quotation marks omitted); see also Coalition on Sensible Transp., Inc. v. Dole , 826 F.2d 60, 69 (D.C. Cir. 1987) (asking "whether one project will serve a significant purpose even if a second related project is not built").
The record supports the Commission's determination that the Southeast Market Pipeline and the Project are independently justified and that each has its own distinct utility. City of Boston Delegation , 897 F.3d at 252. That is because, even if the Project were never built, the Southeast Market Pipeline still would be connected to enough natural gas supply to exceed its capacity. J.A. 843. On this record, that disproves any claim of improper segmentation.
Third , the Homeowners and Environmental Associations contend that the Commission was deficient in its analysis of an alternative site for the Project called the Conestoga Route. Under NEPA, agencies must "identify the reasonable alternatives to the contemplated action," Minisink Residents for Envtl. Pres. & Safety v. FERC , 762 F.3d 97, 102 (D.C. Cir. 2014), and "discuss[ ] * * * the relevant issues and opposing viewpoints," Myersville , 783 F.3d at 1324-1325 (quoting Nevada v. Department of Energy , 457 F.3d 78, 93 (D.C. Cir. 2006) ). This requirement helps ensure that agency actions are "fully informed and well-considered." Id. at 1325 (internal quotation marks omitted).
The Commission's consideration of the Conestoga Route passes NEPA muster. The Commission "look[ed] hard at the environmental effects of its decision" by comparing the proposed route with the Conestoga Route across highly detailed criteria. Minisink , 762 F.3d at 102 (formatting altered). [2]
*947 In doing so, the Commission openly grappled with the factors favoring the Conestoga Route and reasonably explained why the proposed route was nonetheless superior. It acknowledged that the Conestoga Route was shorter and would follow existing rights-of-way for more of its length than the proposed route would, but it placed more weight on the proposed route's virtues, including that it would cross fewer recreational areas and would avoid potentially dangerous elevation changes. That suffices for NEPA. See Myersville , 783 F.3d at 1308 ; Minisink , 762 F.3d at 112.
B
The Homeowners and Environmental Associations separately claim that the Commission's market-need determination violated the Natural Gas Act. A showing of market need is a precondition for the Commission to issue a certificate of public convenience and necessity. See Sierra Club , 867 F.3d at 1379 ; Myersville , 783 F.3d at 1309 ; 90 FERC at ¶ 61,192 ; 88 FERC at ¶ 61,246. The certificate applicant can make its required showing of market need for the pipeline "by presenting evidence of 'preconstruction contracts' for gas transportation service." Sierra Club , 867 F.3d at 1379.
The Commission held Transco to this obligation. Its finding of market need rested on the existence of contracts with shippers for 100% of the Project's capacity. That alone is enough. See Sierra Club , 867 F.3d at 1379 ; Myersville , 783 F.3d at 1311 ; Minisink , 762 F.3d at 111 n.10. And the Commission did not stop there. It also relied on comments by two shippers and one end-user, as well as a study submitted by one of the Environmental Associations, all of which reinforced the demand for the natural gas shipments.
C
Finally, the Environmental Associations and Homeowners argue that the Commission's authorization for construction to go forward while their rehearing petitions were still pending-and thus before the Commission's decision was final and judicially reviewable-denied them due process. Circuit precedent forecloses their claims.
A due-process claim turns on two essential inquiries. First, is there a "liberty or property interest of which a person has been deprived"? Swarthout v. Cooke , 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011). Second, were the "procedures followed" by the government in encroaching on those interests "constitutionally sufficient"? Id .
The Environmental Associations run into trouble on the first prong of that test. They assert that liberty and property interests were bestowed upon them by the Pennsylvania Constitution's Environmental Rights Amendment, Pa. Const. Art. 1, § 27, and the Natural Gas Act's review procedures, 15 U.S.C. §§ 717f(c)(1)(B), 717r(a) - (b). This court has already rejected those claims, and those decisions control here. See Delaware Riverkeeper Network v. FERC , 895 F.3d 102, 110 (D.C. Cir. 2018) (Pennsylvania Constitution); Griffith v. Federal Labor Relations Auth. , 842 F.2d 487, 495 (D.C. Cir. 1988) (Natural Gas Act review procedures); see generally LaShawn A. v. Barry , 87 F.3d 1389, 1395 (D.C. Cir. 1996) ("One three-judge panel * * * does not have the authority to overrule *948 another three-judge panel of the court.").
The Homeowners, for their part, lose on the second prong of the due-process analysis. They argue that the Commission's delay in acting on their rehearing petitions while authorizing construction to start "denied [them] the right to be heard on whether Transco's taking of their property actually satisfies the public use requirement of the Fifth Amendment." Petitioners' Opening Br. 47.
But, again, circuit precedent says otherwise. We have held that, as long as FERC's public-convenience-and-necessity determination is not legally deficient, it necessarily satisfies the Fifth Amendment's public-use requirement. See Midcoast Interstate Transmission, Inc. v. FERC , 198 F.3d 960, 973 (D.C. Cir. 2000). The Homeowners make no claim that they were deprived of a meaningful opportunity to be heard as part of the Commission's proceedings leading up to its issuance of the Certificate Order, and they make no effort to distinguish (or even acknowledge) our holding in Midcoast .
* * *
For the foregoing reasons, the petitions for review are denied.
So ordered.

We therefore deny as moot the motions to dismiss the petitions filed before the Certificate Rehearing Order issued, Nos. 17-1098 and 17-1128.

The "Waterbodies crossed" criterion, for example, quantifies waterbodies for "Trout Stocking," "High Quality Cold Water Fishes," "Cold Water Fishes," "High Quality Warm Water Fishes," and "Warm Water Fishes." J.A. 318.